Revised August 28, 1998

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 97-10240
_____


LARRY KEITH ROBISON,

                              Appellant,

versus


GARY   JOHNSON,   Director,   Texas   Dept.   of
Criminal Justice, Institutional Division,


                              Respondent.


Appeal from the United States District Court
For the Northern District of Texas

August 13, 1998

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

     Larry  Keith  Robison  was  sentenced  to  death  after  being
convicted of capital murder in Texas state court.  Robison filed a
petition for habeas corpus relief in federal district court.  The
district court denied Robison's petition and his subsequent request
for Certificate of Appealability ("COA").  Robison now requests a
COA on eight separate issues he raised below.  We deny COA with

regard to all but his *Penry*[1] claim, with regard to which we grant COA but affirm the district court's dismissal on the merits.

I

In 1983, Larry Keith Robison stood trial for intentionally killing Bruce Gardner in the course of committing robbery, in violation of Tex. Penal Code § 19.03(a)(2). Robison pursued an insanity defense, presenting evidence that he was a paranoid schizophrenic, but the jury returned a verdict of guilty. On direct appeal, the Texas Court of Criminal Appeals reversed Robison's conviction, holding that the trial court had abused its discretion by improperly limiting defense counsel's voir dire questioning regarding potential bias towards the insanity defense, in violation of Article I, § 10 of the Texas Constitution. *Robinson v. Texas*, 720 S.W.2d 808 (Tex. Crim. App. 1986).

In 1987, Robison stood trial again on the same charge, relying as before on a defense of insanity. The jury returned a verdict of guilty and then, during the sentencing phase that followed, answered affirmatively to the two special issues set forth in article 37.071 of the Texas Code of Criminal Procedure. The trial court accordingly sentenced Robison to death by lethal injection. On direct appeal, the Texas Court of Criminal Appeals affirmed Robison's conviction and sentence. *Robison v. Texas*, 888 S.W.2d

_____

[1] *Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989).

473 (Tex. Crim. App. 1994)(en banc). After Robison's application for habeas corpus relief in state court was denied, Robison filed the instant habeas corpus petition in district court. The district court denied Robison's petition without an evidentiary hearing and later denied his request for COA on each issue raised here.

II

Robison seeks a COA from this court on each of the following issues: (1) Whether Robison received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney failed to keep a psychiatrist's report from the jury; (2) Whether Robison received ineffective assistance of counsel because his attorney failed to present evidence of Robison's thought process during the commission of the offense; (3) Whether Robison received ineffective assistance of counsel because his attorney advised Robison not to testify; (4) Whether Robison received ineffective assistance of counsel and was denied his constitutional right to counsel based on his attorney's failure to follow Robison's written instructions as to how to conduct his defense; (5) Whether the Texas "special issues" scheme for determining when to impose a sentence of death violates the Eighth and Fourteenth Amendments to the U.S. Constitution as applied to Robison because the special issues did not allow the jury to consider Robison's mental illness as a mitigating factor ("*Penry* claim"); (6) Whether Robison's claim

of newly discovered evidence states a ground for federal habeas relief; (7) Whether Texas Code of Criminal Procedure article 46.03 § 1(e), which mandates that jurors not be informed of the consequences of a verdict of not guilty by reason of insanity, deprived Robison of his right to due process; and (8) Whether the district court erred in denying Robison's motion for an evidentiary hearing.

"A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Specifically, the applicant must demonstrate that the issue on which he seeks a COA is "debatable among jurists of reason." *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 399, 139 L. Ed. 2d 312 (1997). In determining whether to grant a COA, "[w]e resolve doubts . . . in favor of the petitioner, and we may properly consider the severity of the penalty in making this determination." *Id.* (citations omitted). With these standards in mind, we consider in turn each of the issues raised by Robison.[2]

---

[2]    Before addressing these issues, we briefly dispose of Robison's contention that the Antiterrorism and Effective Death Penalty Act ("AEDPA") does not apply to his case. Following the Supreme Court's decision in *Lindh v. Murphy*, we requested supplemental briefing on the issue of whether AEDPA applied to Robison's habeas claim. *See Lindh v. Murphy*, ___U.S.___, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997) (holding that AEDPA applies only to cases filed after the effective date of April 24, 1996). Robison argues that the "filing date" referred to by *Lindh* should be interpreted to mean the date of conviction. The state, on the other hand, argues that the appropriate filing date should be the

A

Robison contends that his trial attorney rendered ineffective assistance of counsel by giving the report of a psychiatrist, Dr. Buckholtz, to his testifying expert, Dr. Price, thereby allowing the report to be discovered and then used by the state in cross-examination. After spending several hours with Robison over the course of two visits, Dr. Buckholtz rendered an opinion that Robison was sane at the time he committed the murders and prepared a detailed, written report summarizing his conversations with Robison and disclosing his ultimate opinion. Robison contends that his counsel's performance was deficient because he allowed this damaging report to be discovered by the state and used against him in front of the jury. The state habeas court made the following findings of fact related to this issue:

   (1)   At his first trial in 1983, [Robison] was represented by J.R. Molina and Charles Roach. In preparation for [Robison]'s first trial and just seven months after the crimes, counsel employed C.D. Buckholtz, M.D., to conduct a mental evaluation of [Robison].

   (2)   Dr. Buckholtz found that [Robison] was not insane during the commission of the crimes and

date on which the defendant filed the particular federal habeas petition in question. Following our request for supplemental briefing, we resolved this issue in favor of the state, holding that AEDPA applies to habeas petitions filed in federal district court after AEDPA's effective date. *See United States v. Carter*, 117 F.3d 262 (5th Cir. 1997); *United States v. DeLario*, 120 F.3d 580 (5th Cir. 1997). Because Robison filed this federal habeas petition in the Northern District of Texas on December 12, 1996, several months after AEDPA's effective date of April 24, 1996, we will apply AEDPA standards to his habeas claim.

-5-

counsel elected not to present his testimony at the 1983 trial.

(3)   [Robison] was represented by different counsel, David Bays and Sherry Hill (now presiding Judge of County Criminal Court Number One of Tarrant County), at his second trial nearly five years after the commission of the crimes.  In preparation for [Robison]'s second trial, his mother, Lois Robison, retained Randall Price, Ph.D., to evaluate [Robison].

(4)   Along with other materials, [Robison]'s new counsel gave Buckholtz's report to Price. Price testified at the 1987 trial, and on cross-examination, the State reviewed Price's materials, including Buckholtz's report.  The State subsequently cross-examined Price about the report and mentioned it during argument. The jury did not otherwise see the report.

(5)   While, at their request, the jury received portions of Price's testimony on cross-examination during deliberations, it also received at its request portions of the defense's cross-examination of the State's psychiatrist Dr. Griffith.

(6)   Counsel provided Buckholtz's report to Price in order that Price should have before him all available information in making his evaluation of [Robison] and to deflect any criticism from the State on cross-examination.

(7)   The prosecutor at [Robison]'s second trial, Greg Pipes, reviews the jail and penitentiary records of an accused in a major trial. Tarrant County Jail records reflect that Dr. Buckholtz visited [Robison] on May 17, 1983.

(8)   Price testified that the totality of [Robison]'s medical history was critical in evaluating his mental state.

(9)   Notwithstanding the trial court's express consent to [Robison] raising issues independently of his counsel, at no time during trial did [Robison] assert any

-6-

> privilege to prevent disclosure of Buckholtz's report, nor did he voice any objection to the trial court. Moreover, in a letter [Robison] submitted with his final affidavit in this writ proceeding, he gave written instructions to his counsel expressing a desire to be forthright with the jury and he deferred to counsel on matters of strategy.

Robison does not challenge these findings of fact, and we presume them to be correct. *See* 28 U.S.C. § 2254(e). The state habeas court concluded as a matter of law that "[c]ounsel's challenged actions are presumptively within the scope of sound trial strategy" and that "[g]iven [Robison]'s instructions to counsel and his silence at trial, counsel's action of providing Buckholtz's report to Price was justifiable as sound trial strategy."

To succeed on an ineffective assistance of counsel claim, Robison must show that (1) his counsel's performance was constitutionally deficient and (2) his counsel's ineffectiveness resulted in actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To satisfy the first prong of the *Strickland* test, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id*. Moreover, petitioner must "overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997) (internal quotations and citation omitted), and this presumption of adequacy includes making "[e]very effort . . . to eliminate the distorting

effects of hindsight" and to assume "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). The second prong, prejudice, "requires a showing that counsel's errors deprived the defendant of a fair trial." *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Robison argues that his counsel's performance was constitutionally defective because he essentially handed over this confidential, damaging report to the state. The state disagrees, contending that counsel exercised sound trial strategy in providing Price with Buckholtz's report to aid Price in his evaluation of Robison and to protect him on cross-examination.

The state's position is supported by the state habeas court's findings of fact that Robison's counsel showed the report to Price to ensure that Price had "all available information" and to aid in "deflecting criticism from the state on cross-examination." We recognize that Buckholtz's report contained certain damaging passages and an opinion contrary to defense's position. However, given the state habeas court's factual findings, we conclude that Robison has failed to overcome the strong presumption that his counsel's decision to provide Buckholtz's report to Price constituted sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. We therefore hold that Robison has not made a

substantial showing of the denial of a constitutional right with regard to this issue.

B

Robison next contends that his counsel was ineffective in failing to present evidence of his thought process at the guilt-innocence stage of trial by either introducing his autobiography, entitled "The Making of a Schizophrenic," or, assuming the autobiography was inadmissible, developing and presenting that thought process through his expert, Dr. Price.  The autobiography is Robison's 31-page account of his thoughts leading up to and including the time of the murders.  The state habeas court made the following findings of fact with regard to the autobiography:

> (10) . . . At the punishment stage of his trial, in order to evade cross-examination, [Robison] elected not to testify, but he desired to introduce the document into evidence.

> (11) After a conference with the prosecution, defense counsel advised [Robison] that the State would not acquiesce to the admission of the document unless [Robison] took the stand. [Robison] then requested the document be introduced into the record for purposes of review, which the trial court permitted.  . . .

The court concluded that the autobiography was inadmissible as evidence and, alternatively, that counsel could have omitted the autobiography as a matter of trial strategy.

Applying the two-prong *Strickland* test to this claim, we first address counsel's failure to introduce the autobiography into

evidence.  The state court determined that the autobiography was inadmissible, and we do not question that determination.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions.").  This essentially forecloses Robison's claim under *Strickland* that his counsel performed deficiently in failing to introduce inadmissible evidence.  *Cf. Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

We also conclude that Robison has failed to show that his counsel was deficient in developing his thought process through Dr. Price.  First, we note that to the extent that it was relevant, Robison's counsel did, in fact, elicit testimony regarding how Robison's "thought process" supported a diagnosis of paranoid schizophrenia.  Dr. Price explained to the jury that Robison suffered from an "underlying fixed delusional system," which manifested itself in beliefs such as the following:

> He believed that . . . after he killed the first person, that the clock in the))it was in the bathroom, I believe, a digital clock, he said that it flipped over to where it was zeros, and then it started acting like it was a stop clock, and he thought that was a message that he was supposed to start trying to free other souls.

Robison's counsel went on to elicit from Dr. Price testimony as to why this particular episode demonstrated the type of "underlying fixed delusional system" typical of paranoid schizophrenics:

-10-

> I said to [Robison] . . . "Well, but, you know clocks don't do that." And he said, "Well, this one really did that." And I said, "Well, don't you think that was something that you thought it did?" And he said, "No, that's what it did."
>
> So, there was still underlying))if you asked enough questions and spent enough time, there was still an underlying symptomology or a picture there of chronic paranoid schizophrenia.

Furthermore, in light of the contents of the autobiography, we cannot conclude that counsel employed unsound trial strategy in not having Dr. Price extensively quote from or otherwise refer to the document. Robison appears to allege that had the jury known more about his "thoughts" during the murders, they might have been more convinced that he was "crazy." Having reviewed the autobiography, however, we conclude that reasonable lawyers may well disagree about whether the jury would in fact have reacted as Robison theorizes or would instead have reached the opposite conclusion.

Because Robison's argument fails the first prong of *Strickland*, Robison has failed to make a substantial showing that he was deprived of constitutionally effective counsel in this instance.

C

Robison argues that trial counsel rendered ineffective assistance by advising him not to testify at the guilt-innocence stage of the trial. In response, the state contends that counsel's advice not to testify was well within the bounds of reasonable professional assistance. We evaluate this claim of ineffective

assistance under the two-prong standard of *Strickland*, keeping in mind that "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985).

The state habeas court found that Robison's counsel "strongly advised [Robison] against testifying because of the risk that he might adversely expose himself before the jury on cross-examination." The court also made the following findings:

> (16) Counsel did not deny [Robison] the opportunity to testify at the guilt/innocence stage of trial. [Robison] voluntarily gave up his right to testify in order to avoid cross-examination. . . .

> (29) [Robison] realized during trial that counsel could not prevent him from testifying and [Robison] has failed to complain about any inability to testify in the previous nine years; thus, counsel did not deny [Robison] the right to testify.

The state habeas court concluded that "[p]roperly, counsel strongly advised [Robison] against testifying."

Robison challenges findings (16) and (29) as not supported by the record. Specifically, he argues that the discussion on the record about his desire to testify took place at the punishment stage of trial and that it was not until the punishment stage that counsel overbore his will and persuaded him not to testify. Robison contends that the soundness of trial counsel's strategy was questionable considering the nature of the defense))insanity))and

-12-

his desire to testify. Although he concedes that the decision was partially one of strategy, he argues that the decision ultimately should rest with the accused and not his lawyer.

These objections do not provide the type of clear and convincing evidence necessary to rebut the presumed correctness of the state habeas court's factual finding that Robison voluntarily relinquished his right to testify at the guilt-innocence stage.[3] We therefore conclude that Robison has not shown that his trial counsel performed deficiently in advising and persuading Robison not to testify. Moreover, even with the benefit of hindsight, we find that counsel's strong recommendation against Robison's testifying represented reasonable trial strategy. *See Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982) (holding that it was not unreasonable trial strategy for counsel to advise defendant not to testify as to self-defense where defendant "might do more harm

---

[3]     The trial record reveals that during the punishment phase, Robison's counsel questioned him about his desire to testify. During that exchange, Robison acknowledged that counsel had warned him that the prosecutor "would try to make him angry and look real bad in front of the jury." Robison further admitted that counsel had spoken to him many times about testifying and had consistently and strongly recommended against it because of the anticipated, intense cross-examination. Counsel then asked him, "Taking all of that into consideration, I can't keep you off the witness stand, and you know that?" Robison answered, "Yes." When counsel specifically asked Robison whether he wanted to testify, Robison said that he wanted to have his autobiography introduced into evidence but did not want to be subjected to cross-examination. The state refused that request, however, so Robison asked that the autobiography be entered into the record for purposes of appellate review, which the court allowed.

than good by attempting to explain how six shots were fired in self-defense"). For these reasons, we hold that Robison has failed to make a substantial showing of the denial of his constitutional right to effective assistance of counsel.

D

Robison contends that his trial counsel's failure to follow his explicit instructions, as detailed in a letter he wrote to counsel, constituted constitutionally ineffective assistance and violated his Sixth Amendment right to counsel. In response, the state maintains that these claims are procedurally barred and, in any event, meritless.

Robison presented this claim in a supplemental habeas petition to the state habeas court. Relying on Texas Code of Criminal Procedure article 11.071 §§ 4(b) and (f), the state court found that Robison's supplemental petition was untimely filed and that Robison had failed to demonstrate good cause to excuse the delay. On review of Robison's federal habeas petition, the district court held that this claim was procedurally barred.

When the district court dismisses a petition on procedural, nonconstitutional grounds, we employ a two-step COA process. *See Murphy v. Johnson*, 110 F.3d 10, 11 (5th Cir. 1997). First, we must determine if the applicant has made a credible showing that his claim is not procedurally barred. *See id.* If the applicant meets that requirement, we then determine if he "has 'made a substantial

-14-

showing of the denial of a constitutional right'" with respect to the underlying claim. *Id.* (quoting 28 U.S.C. § 2253(c)(2)).

The state argues that because the state court unambiguously based its denial of relief on a state procedural default and Robison is unable to show cause or prejudice for this default, the district court correctly held that this claim was procedurally barred. *See Meanes v. Johnson*, 138 F.3d 1007, 1010 (5th Cir. 1998) ("It is well settled that federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default."); *id*. at 1011 *(*"Where a state court has explicitly relied on a procedural bar, a state prisoner normally may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice."). Robison, however, maintains that he can show cause and prejudice.[4] In order to show cause, Robison must demonstrate that some objective factor external to his defense prevented him from raising this claim. *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). One such objective

_____

[4] Robison does not contend that the state procedural rule in this case has not been strictly or regularly applied by the state. *See Stokes v. Anderson*, 123 F.3d 858, 859-60 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1091, 140 L. Ed. 2d 147 (1998) (explaining that to establish that a state procedural bar is not "adequate," the "petitioner bears the burden of showing that the state did not strictly or regularly follow [the] procedural bar around the time of his direct appeal").

factor is "a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion." *Id.*

Robison claims to have demonstrated cause by presenting evidence that his current counsel was prevented from obtaining access to the trial file that included Robison's letter to his trial counsel until after the state limitations period had run. Even assuming arguendo that Robison's excuse is true, however, Robison has not sufficiently demonstrated cause for the procedural default. Robison was obviously aware of the letter and of the instructions he had given his counsel therein. It was Robison's instructions, however communicated, and not the letter itself, that form the "factual basis of the claim." *See Guerra*, 94 F.3d at 993. Robison thus knew of the factual basis of the claim before his current counsel's discovery of the letter. The fact that Robison may have been unable to produce the best evidence of this communication until later does not constitute cause for the delay in bringing this claim before the court. We thus conclude that Robison has failed to make a credible showing that his claim is not procedurally barred.

E

Relying on *Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), Robison contends that his sentence of death was rendered in violation of the Eighth and Fourteenth

-16-

Amendments, as applied to him, because the special issues provided in Texas Code of Criminal Procedure article 37.071 did not provide an adequate vehicle for the jury to take into account Robison's mitigating evidence of mental illness. Pursuant to article 37.071, the trial court asked the jury the two following statutorily mandated special issues at sentencing:

> (1) Was the conduct of the Defendant, Larry Keith Robison, that caused the death of Bruce Gardner, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?
>
> (2) Is there a probability that the Defendant, Larry Keith Robison, would commit criminal acts of violence that would constitute a continuing threat to society?

The trial court also gave the following instruction:

> You are further instructed that in determining each of these Special Issues, you may take into consideration all of the evidence submitted to you in the full trial of this case, that is, all of the evidence submitted to you in the first part of this case wherein you were called upon to determine the guilt or innocence of the Defendant, and all of the evidence, if any, admitted before you in the second part of the trial wherein you are called upon to determine the answers to the Special Issues hereby submitted to you.

Upon receiving a unanimous, affirmative response to each of the two questions, the judge assessed a sentence of death.

In *Penry*, the Supreme Court set aside Penry's capital sentence, holding that although Penry's evidence of mental retardation and childhood abuse was placed before the jury at sentencing, the sentencer had no reliable means of giving

-17-

mitigating effect to that evidence.  *Penry*, 492 U.S. at 328, 109 S. Ct. at 2952.  "*Penry*'s application has since been limited to that narrow class of situations in which the petitioner's mitigating evidence was placed beyond the jury's effective reach."  *Lucas v. Johnson*, 132 F.3d 1069, 1082 (5th Cir. 1998), *petition for cert. filed*, (U.S. Jun. 8, 1998) (No. 97-9463); *see, e.g.*, *Johnson v. Texas*, 509 U.S. 350, 369-70, 113 S. Ct. 2658, 2670, 125 L. Ed. 2d 290 (1993) (holding that the Texas special issues permitted jurors to consider mitigating evidence of youth in evaluating petitioner's future dangerousness); *Graham v. Collins*, 506 U.S. 461, 475-76, 113 S. Ct. 892, 902, 122 L. Ed. 2d 260 (1993) (holding that the Texas special issues permitted jurors to consider mitigating evidence of youth, family background, and positive character traits because the evidence "had mitigating relevance to the second special issue concerning his likely future dangerousness").  The question presented by Robison's claim is, therefore, "whether the mitigating evidence [he] presented was within the effective reach of the jury under either of the interrogatories considered by the jury."  *Id.*; *see also Lackey v. Scott*, 28 F.3d 486, 489 (5th Cir. 1994) ("A state's refusal to give additional instructions does not amount to constitutional error unless there is a 'reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence.'") (quoting *Johnson*, 509 U.S. at 367, 113 S. Ct. at 2669

-18-

(1993)).

Robison raised this claim in his direct appeal to the Texas Court of Criminal Appeals, claiming, as he does here, that "the jurors were not able to consider the mitigating effect of his mental disease or defect during the punishment phase of the trial."[5] *Robison*, 888 S.W.2d at 486. Consistent with our case law, the court explained that to successfully raise a *Penry* claim, Robison had to show that he had presented mitigating evidence that was "beyond the effective reach of the sentencer." *Id.* at 487. In setting forth the requirements for making such a showing, the court emphasized that it is not the labels imposed by society that are mitigating, but rather the "specifics of the evidence, presented at trial, and how that evidence affected the personal moral culpability of the defendant." *Id.* The court distinguished *Penry* in this respect, explaining that "it was not that [Penry] was 'mentally retarded' and abused as a child," but rather the fact that "[a] psychiatrist testified that Penry was unable to learn from his mistakes . . . . It is this testimony, and not the label of 'mental retardation,' that society believes is mitigating." *Id.* at 488.

The court reviewed in detail the evidence of mental illness

---

[5] The Supreme Court decided *Penry* after Robison's conviction but before his direct appeal. Thus, the Texas Court of Criminal Appeals imposed no procedural bar and instead reached the merits of Robison's *Penry* claim.

-19-

that Robison presented at trial. The court noted that Robison's expert witness, Dr. Price, testified on behalf of Robison about his insanity defense, speaking extensively about the nature of schizophrenia and describing the typical behavior of a person suffering from schizophrenia. The court further noted that evidence at trial indicated that several of Robison's relatives had been diagnosed as schizophrenics and that there may be a hereditary link to the disease. The court also indicated that much evidence of Robison's history of drug and alcohol abuse was admitted, including accounts of Robison's hospitalization for drug use. Price testified that certain drugs, such as LSD and amphetamines, tend to cause a person to exhibit symptoms that appear schizophrenic, and the state's witness, Dr. Griffith, testified that Robison was faking mental illness, had engaged in extensive drug use, and that Robison's behavior was attributable to drug-induced psychosis, which exhibits similar symptoms to schizophrenia. Finally, evidence at trial indicated that schizophrenia was episodic and could become manifest at certain times and then go into remission at others. Both Price and Griffith testified that schizophrenia is treatable. After recounting all of this evidence, the court concluded that it was "insufficient to raise a '*Penry*' issue," explaining that even "assuming arguendo that [Robison] was schizophrenic, there was no evidence that [Robison's] mental disease decrease[d] his personal

moral culpability." *Id.* at 488-89. The court therefore overruled Robison's point of error that the special issues failed to provide an adequate mechanism for the jury to consider and give effect to his mitigating evidence.

With respect to the first special issue, the Supreme Court explained in *Penry* that a rational juror could have concluded based on Penry's confession, that Penry acted deliberately in killing his victim. However, because Penry was mentally retarded, and "thus less able than a normal adult to control his impulses or to evaluate the consequences of his conduct, . . . that same juror could also conclude that Penry was less morally culpable than defendants who have no such excuse, but who acted 'deliberately' as that term is commonly understood." *Id*. at 322-23, 109 S. Ct. at 2949 (internal quotations and citations omitted). The Court therefore concluded that it could not be sure that the jury was able to give effect to Penry's mitigating evidence in answering the first special issue, reasoning that a juror could believe that Penry's mental retardation diminished his moral culpability but also believe that he committed the crime deliberately. *Id*. at 323, 109 S. Ct. at 2949. Turning to the second special issue, the Court concluded that Penry's evidence of mental retardation and resultant inability to learn from his mistakes was relevant only as an aggravating factor because it suggested that Penry would be a continuing threat to society and therefore would compel the jury to

answer "yes" to the second special issue. According to the Court, Penry's mental retardation and history of abuse was thus a "two-edged sword:  it may diminish his blameworthiness for his crime even as it indicates there is a probability he will be dangerous in the future." *Id*. at 324, 109 S. Ct. at 2949.  Therefore, the Court concluded that the second special issue also did not provide a vehicle for the jury to give mitigating effect to Penry's mental retardation.

Robison contends that the reasoning of *Penry* applies equally to him.  He argues that the first special issue did not allow the jury to give mitigating effect to his mental illness. Specifically, he claims that not knowing one's conduct is wrong and not being able to conform one's conduct to the requirements of the law do not disable one from acting deliberately.  Thus, he continues, the jury could have concluded that he acted deliberately but at the same time concluded that he could not conform his conduct to the law.  With respect to the second issue, he contends that despite the treatable nature of schizophrenia, the jury could have nonetheless found him to be more dangerous, not less so because treatability does not give assurance of a lasting cure.

Given the similarities between Robison's evidence of mental illness and the evidence discussed in *Penry*, we find that Robison has made a "substantial showing of the denial of a constitutional right" on this issue, and we accordingly grant COA on it.  28

-22-

U.S.C. § 2253(c)(2). We therefore review this claim under the standard set forth in 28 U.S.C. § 2254(d): we will grant Robison's petition for writ of habeas corpus only if the state court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." An application of federal law is "unreasonable" only if it is "so clearly incorrect that it would not be debatable among reasonable jurists." *Nobles v. Johnson*, 127 F.3d 409, 418 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1845, 140 L.Ed.2d 1094 (1998) (internal quotations and citation omitted). In other words, "an application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Id*. at 416 (internal quotations and citation omitted).

Although we question whether Robison could show that his mitigating evidence was beyond the effective reach of the jury with respect to the first special issue, *see Lucas*, 132 F.3d at 1082 (holding that the sentencer could effectively consider the mitigating aspects of Lucas's evidence of mental illness)including expert testimony that Lucas was psychotic and suffered from schizophrenia))under the first special issue), we need not decide that issue here because we can affirm the district court's decision with respect to the second special issue. *See Davis v. Scott*, 51

F.3d 457, 464 (5th Cir. 1995) (concluding that it "need not consider whether the second special issue provided another, separate, adequate means" for the jury to consider Davis's mitigating evidence because it had already determined that the jury had an adequate means through the first special issue). In relation to the second issue, the state distinguishes Penry's mental retardation from Robison's mental illness, arguing that the former is constant while schizophrenia is treatable and capable of going into remission. Furthermore, the state points out that defense counsel itself argued during the punishment phase that for precisely those reasons, the jury should answer "no" to the second question: there was no probability of future dangerousness because Robison had improved, was))according to his own expert))in remission, would be in a controlled environment for life, and therefore could continue to be in remission. Robison responds by arguing that the treatable nature of his mental illness does not assure a long-lasting cure and, therefore, the jury could nonetheless have found Robison to be more dangerous, not less.

Based on the evidence Robison presented at trial, we conclude that the jury could give mitigating effect to Robison's evidence of mental illness in answering the second special issue, which concerned Robison's future dangerousness. *See Davis*, 51 F.3d at 464 (explaining that "a *Penry* claim does not arise when constitutionally relevant evidence 'can be given mitigating effect

-24-

*in some way* under the Texas special issues'") (quoting *Motley v. Collins*, 18 F.3d 1223, 1234 (5th Cir. 1994)) (emphasis in original). In *Lucas*, experts testified that Lucas was "psychotic and suffered from schizophrenia." *Lucas*, 132 F.3d at 1082. The trial testimony also indicated that Lucas "responded well to antipsychotic drugs like Thorazine and that his particular illness could be treated in a controlled environment." *Id*. Distinguishing *Penry*, we held that "[t]his prospect of medical treatment placed the evidence of his mental illness and abusive childhood within 'the effective reach of the sentencer' as a potential mitigating factor with respect to the second issue" because "the jury could have considered whether, in an institutional setting, the probability that Lucas posed as a future danger to society was not so great as to merit imposition of the death sentence." *Id.; see also Davis*, 51 F.3d at 464 (concluding that jury could give mitigating effect to Davis's evidence under the second special issue because the evidence did not demonstrate "that he was unable to learn from his mistakes" but did demonstrate that "he responded positively to a structured environment"). That distinction applies with equal weight to Robison's case: both Robison's expert and the state's expert testified that schizophrenia is treatable, and Robison's expert testified that he was currently in a state of remission, which he attributed to being a result of the structure of prison life. *See Graham*, 506 U.S. at 475, 113 S. Ct. at 902

(holding that "Graham's evidence))*unlike* Penry's))had mitigating relevance to the second special issue concerning his likely future dangerousness" because his evidence "quite readily could have supported a negative answer") (emphasis in original).  We thus hold that the conclusion of the Texas Court of Criminal Appeals that Robison's evidence did not raise a *Penry* issue was not a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d).  We accordingly affirm the district court's dismissal of this claim.

F

Robison claims he has newly discovered evidence supporting his claim of insanity, and he contends that his execution without examination of this new evidence would be so fundamentally unfair as to violate due process under the Fourteenth Amendment.  Robison alleges no other constitutional violation in conjunction with his claim of newly discovered evidence.  He raised this claim in both his state and federal habeas petitions, and both courts rejected the claim without an evidentiary hearing.

Robison's alleged new evidence is that after his conviction was affirmed on direct appeal, his half-sister was diagnosed as manic depressive and schizoaffective.  Dr. Price, who testified on Robison's behalf at the second trial, concluded in an affidavit

-26-

attached to Robison's state habeas petition that this new information would "lend very heavy weight in support of [his] diagnosis." In addition, Dr. Duckers, an expert subpoenaed to testify at Robison's trial but ultimately not called because he attributed Robison's psychosis more to drug use than to schizophrenia, swears in an affidavit that Robison's new evidence "would change [his] professional opinion of the cause of Mr. Robison's psychosis and [would cause him to] attribute [the psychosis] more to schizophrenia than drug use."

The state habeas court found that "in the context of the jury's awareness of [Robison's] own medical history and his family's medical history, the fact that [Robison's] half-sister has succumbed to a mental health problem years after the commission of the crimes is of little or no import and does not support a claim of actual innocence." In support of this finding, we note that at trial Robison presented testimony regarding his own mental health history, which included diagnoses of schizophrenia, as well as evidence that four people in Robison's family were diagnosed with schizophrenia (including a great-grandfather and two uncles). In addition, Dr. Price testified about the possible genetic basis of schizophrenia.

We reject Robison's claim of newly discovered evidence. Contrary to Robison's reliance on the often-quoted "actual innocence" dicta in the Supreme Court case *Herrera v. Collins*, 506

U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993),[6] we have held in this circuit that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus," and "the Supreme Court's *Herrera* opinion does not alter this entrenched habeas principle."[7] *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998). Moreover, even assuming the application of the "actual innocence" dicta in *Herrera* (and assuming additionally that proof of insanity deserves the same treatment as claims of "actual innocence"), Robison's demonstration here that yet another relative suffers from a related but not identical mental disorder does not rise to the standard of "truly persuasive." Robison has failed to make a substantial

---

[6]    Robison refers to the following passage in *Herrera*:

We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.

*Id.* at 417, 113 S. Ct. at 869.

[7]    We also note that in Robison's case, "a further bar to construing *Herrera* as effecting such a substantial expansion of federal habeas law is the language ignored by the petitioner that federal habeas relief would be warranted only 'if there were no state avenue open to process such a claim.'" *Lucas*, 132 F.3d at 1075 (quoting *Herrera*, 506 U.S. at 417, 113 S. Ct. at 869). Following the Supreme Court's *Herrera* case, Texas began recognizing "actual innocence" claims. *See State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389 (Tex. Crim. App. 1994) (announcing that it would begin entertaining postconviction applications for the writ of habeas corpus alleging actual innocence as an independent ground for relief).

-28-

showing of the denial of a constitutional right with respect to this issue.

G

Robison contends that Texas Code of Criminal Procedure article 46.03 § 1(e) violates due process because it prohibits the accused from informing the jury of the consequences of a not guilty by reason of insanity (NGI) verdict.[8] Robison claims that members of a venire may have erroneous impressions about the consequences of such a verdict that should be corrected in order to ensure fundamental fairness, and more specifically, that in his particular trial, the state played on these erroneous impressions by implying that Robison would be released into society after an NGI verdict.[9]

---

[8] Robison challenges this statute only as it applies to the particular circumstances of his case; he explicitly states in his application for COA that he does not challenge the statute "globally."

[9] Specifically, Robison argues that the state made the following and other similar statements:

"[O]ur law says that if a person is insane at the exact time of the offense, then he cannot be held responsible for his actions."

If the jury return an NGI verdict, "that would be the end of the trial. He would be found not guilty by reason of insanity, and you'd be discharged and return to [your job]."

"But the law says that if they [the defense] prove it to you by a preponderance of the evidence, then the law excuses them for having met that burden of insanity."

"Our law says . . . that if someone meets our legal definition of insanity, and if they are insane under our legal definition, that their conduct is excused under the

-29-

Addressing this issue on direct appeal, the Texas Court of Criminal Appeals held that the state did not erroneously indicate that a verdict of NGI would result in Robison's release into society.[10]  *Robison v. State*, 888 S.W.2d 473, 475-76 (Tex. Crim. App. 1994).  Distinguishing the remarks made by the state in this case from an explicit declaration that a defendant will go free following an NGI verdict, the court did not find fault with the state for "confront[ing] the premise of the insanity defense, [which is that] a defendant is excused of the criminal responsibility for his actions and that the jurors' responsibilities end at that point."[11]  *Id*. at 476.

We conclude that Robison has not made a substantial showing of the denial of a constitutional right with regard to this issue.  As the Texas Court of Criminal Appeals found, the state did not say

_____

law."

"Our law says we don't have temporary insanity, and a person can't get off or relieve himself of responsibility for his acts unless he proves himself legally insane."

[10]    The Court of Criminal Appeals also rejected Robison's facial challenge to this statute, reasoning that the statute reflects the policy judgment of the legislature. *Robison v. State*, 888 S.W.2d 473, 475-76 (Tex. Crim. App. 1994).

[11]    Specifically declining to address the situation in which the state does indicate that a defendant would be released into society upon a finding of NGI, the court did, however, state that "[a]t that point the trial court would possibly be permitted to declare a mistrial or instruct the jury that the state is incorrect as to the law of insanity, but the law precludes any discussion of the consequences of a finding of not guilty by reason of insanity." *Id.* at 476 n.3.

that the defendant would go free if the jury rendered a verdict of NGI and instead said only that the defendant is relieved of responsibility. *See Shannon v. United States*, 512 U.S. 573, 587, 114 S. Ct. 2419, 2428, 129 L. Ed. 2d 459 (1994) (holding that instruction concerning the consequences of an NGI verdict "is not to be given as a matter of general [federal criminal] practice," but "recogniz[ing] that an instruction of some form may be necessary under certain limited circumstances" such as when "a witness or prosecutor states in the presence of the jury that a particular defendant would 'go free'"). Furthermore, the court instructed the jury that it should neither "consider nor discuss the effect of a verdict of not guilty by reason of insanity," and this instruction should have sufficiently safeguarded Robison's due process rights. See *United States v. Levine*, 80 F.3d 129 (5th Cir.), *cert. denied*, 117 S. Ct. 83, 136 L. ED.2d 40 (1996) (finding no violation of due process or right to fair trial where the prejudicial effect of the prosecutor's statement that "buy[ing] [Levine's] insanity defense" would mean that Levine "walk[s] out of this courtroom a free man," was minimized by two instructions by the district court).

H

Lastly, Robison argues that the district court erred in denying his motion for an evidentiary hearing, which Robison requested with respect to (1) his newly discovered evidence claim

-31-

(regarding his half-sister's recent diagnosis) and (2) his claim of ineffective assistance of counsel based on the failure to develop Robison's state of mind through his expert. The district court denied Robison's motion for evidentiary hearing on the grounds that he did not meet the test set forth in 28 U.S.C. § 2254(e)(2), which provides, in relevant part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that ))
> (A) the claim relies on ))
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Robison contends that any failure to develop the factual basis of his claim was not attributable to his lack of attempt to do so but to the state's denial of a "true" hearing. He argues that the state denied him such a "true" hearing by not hearing witnesses, observing their demeanor, or seeing their credibility tested by cross-examination.

We have stated that "a petitioner cannot be said to have 'failed to develop' a factual basis for his claim unless the

undeveloped record is a result of his own decision or omission." *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998). Assuming arguendo that Robison has cleared this initial hurdle of § 2254(e)(2), he must still show that the district court abused its discretion in denying the hearing. *See id.* at 1060 (explaining that § 2254(e)(2) "specifies the situations where evidentiary hearings are *allowed*, not where they are *required*") (emphasis in original); *see also id.* (stating that the subsequent decision to hold an evidentiary hearing is "committed to the district court's discretion pursuant to Rule 8 of the Rules Governing § 2254 Cases"). Given our resolution of these two claims, *see supra* Parts II.B and II.F, which reveals no relevant factual disputes that would require development in order to assess the claims, we hold that the district court did not abuse its discretion in denying Robison's motion for an evidentiary hearing.

## III

For the foregoing reasons, we DENY COA on all issues except the *Penry* claim, on which we GRANT COA. With respect to the *Penry* claim, we AFFIRM the district court's dismissal on the merits.