**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-11475

KENNETH DEWAYNE THOMAS,

Petitioner - Appellant,

VERSUS

JANIE COCKRELL, Director,
Texas Department of Criminal Justice, Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
3:00-CV-051-P

November 18, 2002

Before DAVIS, BENAVIDES and STEWART, Circuit Judges.

PER CURIAM:[1]

Petitioner Kenneth DeWayne Thomas seeks a certificate of appealability regarding the district court's denial of habeas corpus relief. Because Thomas has failed to make a substantial showing of a denial of a constitutional right, we deny Thomas's Application for COA.

I.

Thomas was convicted and sentenced to death in August 1987 for the capital murder of Mildred Finch in the course of committing or attempting to commit a burglary. The facts of the crime are gruesome and also involved the murder and molestation of Mrs. Finch's husband. On direct

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

appeal, the Texas Court of Criminal Appeals originally abated the appeal and remanded the case to the trial court. Thomas v. State, 837 S.W.2d 106 (Tex. Crim. App. 1992) (Thomas I). On appeal after remand, the court affirmed the conviction and death sentence in an unpublished opinion. Thomas v. State, No. 69,938 (Tex. Crim.App. June 8, 1994) )(Thomas II). The court subsequently denied Thomas's motion for rehearing. Thomas did not file a petition for writ of certiorari to the United States Supreme Court.

In May 1997, Thomas filed an application for writ of habeas corpus in the state trial court. The court filed findings of fact and conclusions of law recommending the denial of relief. The Court of Criminal Appeals adopted the trial court's findings and conclusions and denied the application.

Thomas filed this federal habeas petition in July 2000. In August 2001, the magistrate judge issued findings of fact and conclusions of law recommending denial of federal habeas relief. In October 2001, the district court entered an order adopting the magistrate's recommendations and denied Thomas's petition. This appeal and application for COA followed.

More detail on the evidence related to the legal issues presented and the specific findings of the state courts with regard to that evidence are provided below.

II.

A certificate of appealability may issue only where the petitioner makes a substantial showing of a denial of a constitutional right. To do so, the petitioner must show that (1) the issues are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions presented are adequate to deserve encouragement for further proceedings. Barefoot v. Estelle, 463 U.S. 880, 893, n. 4 (1983). In reviewing a state prisoner's federal habeas petition, a "determination of a factual issues made by a State court shall be presumed to be correct." 28 U.S.C.

2

§ 2254.

III.

A.

Thomas's main argument is that the punishment phase jury charge did not allow the jury to give effect to his evidence of mental impairment and mental retardation. In <u>Penry v. Lynaugh</u> (<u>Penry I</u>), 492 U.S. 302 (1998), the Supreme Court held that Penry "had been sentenced to death in violation of the Eighth Amendment because his jury had not been adequately instructed with respect to mitigation evidence." <u>Penry v. Lynaugh</u> (<u>Penry II</u>), 121 S.Ct. 1910, 1915 (2001) (describing the decision in <u>Penry I</u>.) In <u>Penry II</u>, the Supreme Court held that the jury instructions on mitigating circumstances given in response to <u>Penry I</u> failed to provide the jury with a vehicle to give effect to mitigating circumstances of mental retardation and childhood abuse, as required by the Eighth and Fourteenth Amendments.

The jury instructions in this case are substantially similar to those given in <u>Penry I</u>. Thomas's jury was asked to answer the Texas statutory "special issues":

> (1) Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

> (2) Is there a reasonable probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

Under the Texas statute, if either question is answered "no," then the death penalty is not imposed. No "nullification" instruction of the type addressed in <u>Penry II</u> was given.

Thomas's mitigating evidence on the issues of mental retardation and mental impairment came primarily from his expert, Dr. Crowder. Dr. Crowder testified that Thomas's I.Q. was tested twice

and yielded scores of 75 and 77, that Thomas reads at the beginning 4th grade level and that his math and spelling skills fall below the 3rd grade level. Dr. Crowder testified that Thomas was "mentally impaired to the point that he's borderline retarded . . . But in essence, he's mentally retarded, can't learn as well, can't think as well, can't reason through things well." He also diagnosed Thomas with organic affective syndrome, as a result of brain damage during the birth process (umbilical cord around the neck) and a head injury he suffered as a teen. Dr. Crowder concluded that the brain damage resulted in poor impulse control. The opinion of the Texas Court of Criminal Appeals notes that "Dr. Crowder specifically testified that treatment was available for the applicant's condition and that with this treatment the applicant would be substantially less likely to constitute a continuing danger to society."

The Texas Court of Criminal Appeals concluded that this evidence did not establish mental retardation by applying a three part test adopted by the Texas state courts.

> According to the American Association on Mental Retardation (AAMR), a person is considered to be mentally retarded only when there is evidence of: (1) subaverage general intellectual functioning, (2) concurrent deficits in adaptive behavior, and (3) onset during the early development period. See David L. Rumley, Comment: A License to Kill: The Categorical Exemption of the Mentally Retarded from the Death Penalty, 24 St. Mary's Law Journal Number 4 1299, 1312-14 (1993). Texas has adopted the AAMR three-part definition of mental retardation in the "Persons With Mental Retardation Act." See V.T.C.A., Health & Safety Code, *Section 591.003(13)* ("mental retardation" means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period); V.T.C.A., Health & Safety Code, *Section 591.003(16)* ("person with mental retardation" means a person determined by a physician or psychologist licensed in this state or certified by the department to have subaverage general intellectual functioning with deficits in adaptive behavior).

Ex Parte Tennard, 960 S.W.2d 57, 60 (Tex. Ct. Crim. App. 1997).

In Atkins v. Virginia, the Supreme Court declared that execution of criminals who are

4

mentally retarded is cruel and unusual punishment in violation of the Eighth Amendment. 122 S.Ct. 2242 (2002). The Court, however, left "to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences" Id. at 2250, quoting Ford v. Wainwright, 477 U.S. 399, 405 (1986). The test adopted by the Texas state courts conforms substantially to the clinical definitions of mental retardation noted in Atkins. Id. at 2245, n.3.[2] Further, because the question of whether a defendant is mentally retarded presents a question of fact, the state's determination that Thomas is not mentally retarded, using this reasonable test, is presumed correct. 28 U.S.C. § 2254(e)(1); Tennard v. Cockrell, 284 F.3d 591 (5th Cir. 2002), *vacated and remanded for further consideration in light of* Atkins, 154 L. Ed. 2d 4, 123 S. Ct. 70, (2002). Relatedly, this court has rejected assertions of mental retardation and the need for a Penry instruction

---

[2] The following definitions of mental retardation were cited in Atkins:
The American Association of Mental Retardation (AAMR) defines mental retardation as follows: "Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).

The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. Id., at 42-43.

5

for petitioners with I.Q. scores similar to Thomas's. See Jones v. Johnson, 171 F.3d 270, 276 (5th Cir. 1999)(no Penry instruction required for petitioner with I.Q. between 73 and 77 which amounted to borderline retardation with no evidence linking condition to offense conduct). For the reasons stated above, we conclude that the jury could give adequate consideration to Thomas' mitigation evidence of alleged mental retardation.

B.

Thomas argues next that the jury, as charged, could not give adequate consideration to his mitigation evidence of other mental impairment. The Texas Court of Criminal Appeals held that even if Thomas could establish a mental impairment to which the instant offense was attributable, the special issue on future dangerousness was sufficient to give mitigating effect to this evidence. This is so because Thomas's expert testified that Thomas's condition was treatable if he was maintained in a controlled environment.

This court's decision in Robison v. Johnson, 151 F.3d 256 (5th Cir. 1998), supports the conclusion reached by the district court. In Robison, the defendant presented evidence of mental illness, including a diagnosis of schizophrenia. The experts testified that his condition was treatable. Id. at 264. Like Thomas, Robison contended that he was entitled to a Penry instruction because neither the future dangerousness or deliberateness questions gave the jury an adequate vehicle to consider this evidence. Like Thomas, Robison also argued that his mental illness, which affects his ability to distinguish between right and wrong and his ability to conform to the requirements of the law, did not prevent him from acting deliberately. Id. at 265. He also argued that despite the treatable nature of schizophrenia, the jury could have still found him a future danger. Id. This court concluded that Robison had made a "substantial showing of the denial of a constitutional right" and

6

granted COA. Id. However it denied Robison's petition for habeas corpus based on its conclusion that the jury could have given mitigating effect to Robison's evidence of mental illness in answering the question of future dangerousness. Id., citing Davis v. Scott, 51 F.3d 457 (5th Cir. 1995) and Lucas v. Johnson, 132 F.3d 1069 (5th Cir. 1998). The court also found it unnecessary to consider whether Robison's mitigating evidence was beyond the effective reach of the jury on the issue of deliberateness, because it affirmed the district court's conclusion that the jury could give the evidence effect in answering the question on future dangerousness. Id.

Accordingly, following Robison, we are satisfied that the district court correctly denied Thomas's petition for habeas corpus because (1) Thomas did not establish that he was mentally retarded, and (2) Thomas's evidence of mental illness could be considered under the future dangerousness issue.

IV.

Thomas argues finally that his counsel was ineffective for failing to place Thomas's mental condition in issue during the guilt/innocence phase of trial. The district court found that Thomas failed to present this issue to the state courts. Accordingly, as Thomas concedes, this claim is procedurally barred on federal habeas. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

V.

For the foregoing reasons, Thomas's Application for COA is DENIED.