IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 98-41474

———————————————

EARL CARL HEISELBETZ, JR,

Petitioner-Appellant,

v.

GARY JOHNSON, Director, Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(98-CV-37)
_____

July 26, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

KING, Chief Judge:[*]

Petitioner-appellant Earl Carl Heiselbetz, Jr., a Texas

death row inmate, requests a certificate of appealability in

order to appeal the district court's grant of summary judgment on

his application for a writ of habeas corpus in favor of

respondent-appellee Gary Johnson, Director of the Texas

Department of Criminal Justice, Institutional Division.  We

decline to issue a certificate of appealability.

_____

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL HISTORY

In November 1991, petitioner Earl Carl Heiselbetz, Jr. was convicted of the capital offense of committing two murders in the same criminal transaction[1] and sentenced to death in the district court of Sabine County, Texas. On June 28, 1995, the Texas Court of Criminal Appeals, the state's highest criminal court, affirmed Heiselbetz's conviction and sentence. See Heiselbetz v. State, 906 S.W.2d 500, 513 (Tex. Crim. App. 1995) (en banc). Heiselbetz did not file a petition for writ of certiorari to the United States Supreme Court. On April 24, 1997, however, he filed an application for state habeas corpus relief. The state habeas trial court entered findings of fact and conclusions of law, which the Texas Court of Criminal Appeals adopted, denying Heiselbetz's habeas application. On February 5, 1998, Heiselbetz filed a federal habeas application in the United States District Court for the Eastern District of Texas. The district court referred all dispositive motions filed in the case to a magistrate judge, who recommended that the district court deny relief. Both parties filed objections, but the district court ultimately adopted the magistrate judge's report and recommendations and denied habeas relief. The district court also denied Heiselbetz's request for a certificate of

---

[1] The prosecution's theory of the case was that on May 30, 1991, in Sabine County, Texas, Heiselbetz murdered both Rena Rogers, his neighbor, and her two-year-old daughter, Jacy Rogers. See Heiselbetz v. State, 906 S.W.2d 500, 504-06 (Tex. Crim. App. 1995) (en banc).

2

appealability (COA).  Heiselbetz now requests a COA from this court.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Heiselbetz must obtain a COA in order to appeal the denial of his habeas petition.[2]  A COA may be issued only if the prisoner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"  Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Moreover, where a state court has adjudicated the habeas applicant's claim on the merits, we cannot grant a COA unless the applicant makes a substantial showing that the state court decision is not entitled to deference under 28 U.S.C. § 2254(d). See Corwin v. Johnson, 150 F.3d 467, 476 (5th Cir.), cert.

---

[2]  Heiselbetz does not appear to contest that the AEDPA applies to his federal habeas application.  In both the district court and our court, he filed requests for certificates of appealability, the AEDPA's term for a certificate of probable cause.  See Green v. Johnson, 116 F.3d 1115, 1120 (5th Cir. 1997) (citing 28 U.S.C. § 2253(c)(2)).  Moreover, we note, he filed his habeas application on February 5, 1998, well after the April 24, 1997 deadline for prisoners whose convictions became final before AEDPA's effective date.  See Flanagan v. Johnson, 154 F.3d 196, 200 (5th Cir. 1998).

3

denied, 119 S. Ct. 613 (1998). As amended by the AEDPA, this section provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Our case law has fleshed out these statutory standards. We have explained, for example, that "a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal, even if federal courts later reject that view of the applicable precedent." Mata v. Johnson, 99 F.3d 1261, 1268 (5th Cir. 1996), vacated in part on other grounds on reh'g, 105 F.3d 209 (5th Cir. 1997). Similarly, we have held that "[a]n application of federal law is unreasonable only 'when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect.'" Trevino v. Johnson, 168 F.3d 173, 181 (5th Cir. 1999) (quoting Drinkard, 97 F.3d at 769), petition for cert. filed, --- U.S.L.W. --- (U.S. June 17, 1999) (No. 98-9936).

Finally, where the district court denied relief because the applicant's claim was procedurally barred, see Coleman v.

4

Thompson, 501 U.S. 722, 729 (1991),[3] we employ a two-step COA process.  See Robison v. Johnson, 151 F.3d 256, 262 (5th Cir. 1998), cert. denied, 119 S. Ct. 1578 (1999). We first ask whether the applicant has made a credible showing that his claim is not so barred.  See id.  If the applicant meets that requirement, we then determine if he "has made a substantial showing of the denial of a constitutional right" with respect to the underlying claim.  Id. (internal quotation marks omitted).

With these principles in mind, we proceed to consider the issues on which Heiselbetz requests a COA.

**B.  Heiselbetz's Claims**

### 1.  State Habeas Court's Refusal to Hold an Evidentiary Hearing

First, Heiselbetz argues that the state habeas court's failure to hold an evidentiary hearing on his claims denied him his Fourteenth Amendment right to due process of law and his Sixth Amendment right to the assistance of counsel.  In addition, he contends that, in the absence of an evidentiary hearing, the state court adjudication is not entitled to deference under

---

[3]  It is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.  See Coleman, 501 U.S. at 729; Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).  A state court may expressly and unambiguously base its denial of relief on a state procedural default even if it alternatively reaches the merits of a habeas petitioner's claim.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Ellis v. Lynaugh, 873 F.2d 830, 838 (5th Cir. 1989).  Federal review is not foreclosed, however, unless the state courts' procedural bar is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

§ 2254(d).  We conclude that Heiselbetz has failed to make a substantial showing of the denial of a constitutional right.

It is well-established law in this circuit that "errors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction.  An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'" Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) (quoting Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir. 1987)); see Trevino, 168 F.3d at 180 (holding that infirmities in state habeas proceedings do not constitute grounds for relief in federal court); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992) (same); Vail v. Procunier, 747 F.2d 277, 277 (5th Cir. 1984) (same).  Other circuits similarly have decided that habeas corpus relief is not available to correct alleged errors in state habeas proceedings.  See, e.g., Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986).  But see Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984) (allowing a federal habeas claim arising out of alleged errors in a state court habeas proceeding).  Under the law of this circuit, Heiselbetz has failed to make a substantial showing of a denial of a

6

constitutional right.  We therefore decline to issue a COA on this issue.

We also reject Heiselbetz's contention that the lack of a hearing renders the state court habeas proceeding insufficient for deference purposes under § 2254(d).  Under the post-AEDPA habeas regime, we must defer to a state court adjudication "on the merits," as opposed to one decided on procedural grounds, of a habeas petitioner's claim, unless two statutory exceptions apply.  28 U.S.C. § 2254(d).  Resolution on the merits is "a term of art in the habeas context that refers not to the quality of a court's review of claims, but rather to the court's disposition of the case--whether substantive or procedural."  Green v. Johnson, 116 F.3d 1115, 1121 (5th Cir. 1997).  Indeed, the Green court explicitly rejected the argument of the habeas applicant in that case that the AEDPA's adjudication on the merits prerequisite is a proxy for the quality of the legal process of resolving a dispute and that, to be entitled to deference under § 2254(d), the court's treatment of the application must evince careful consideration and a thorough and meaningful substantive evaluation of the claims.  See id. at 1120-21.  In short, whether an adjudication is "on the merits" does not depend on whether the state habeas court held a hearing.  Therefore, the absence of a hearing, by itself, does not excuse us from the deference § 2254(d) requires that we afford to state court habeas adjudications.

7

## 2. State Trial Court's Refusal to Grant a Continuance

Second, Heiselbetz contends that the state trial court's refusal to grant a continuance violated his Sixth Amendment rights to the effective assistance of counsel and compulsory process and his Fourteenth Amendment right to due process of law. Although Heiselbetz's trial was set for late October 1991, his attorney, John Walker, was not appointed to represent him until July 29, 1991. The court did not appoint an investigator to assist Walker until September 9, 1991. On September 20, 1991, the prosecutor presented Walker with a list of over seventy-five potential witnesses, and several weeks later, on October 14, 1991, Walker filed a motion for a continuance seeking additional time to prepare for trial. The trial court denied the motion. Heiselbetz claims that the denial of a continuance prevented Walker from adequately investigating the effect of Heiselbetz's 1975 head injury on his criminal conduct. He also argues that "there were additional problems stemming from the denial of a continuance, including an inability to deal with a hostile opinion climate, an inability to develop evidence of childhood abuse, and a temporary problem with counsel's illness." The district court below found that Heiselbetz's continuance-related claims were procedurally barred.

As we explained above, when the district court denies a habeas application on procedural, nonconstitutional grounds, we employ a two-step COA process, first looking to whether the applicant has made a credible showing that his claim is not

8

procedurally barred.  See Robison, 151 F.3d at 262.  In his brief to this court, Heiselbetz makes no mention of the district court's conclusion that his claims stemming from the denial of a continuance are procedurally barred.  He has therefore failed to make a credible showing that the claims are not procedurally barred, and we will not grant a COA on these issues.

### 3. State Trial Court's Failure to Instruct the Jury on Minimum Period of Incarceration for a Capital Defendant Sentenced to Life Imprisonment

We now turn to Heiselbetz's next set of claims.  Heiselbetz contends that the state trial court's failure to instruct the jury that, at the time, a defendant convicted of a capital crime and sentenced to life imprisonment was required to serve fifteen years before becoming eligible for parole violated the Eighth and Fourteenth Amendments.  Citing Smith v. State, 898 S.W.2d 838, 847-53 (Tex. Crim. App. 1995), and Shannon v. State, 942 S.W.2d 591, 594 (Tex. Crim. App. 1996), the state habeas trial court rejected Heiselbetz's claims as "contrary to the law" and noted that "[a]pplicant has not provided the court any reason why Smith and the other cases following it should be reconsidered."  The Texas Court of Criminal Appeals later adopted the trial court's findings of fact and conclusions of law in denying habeas relief.  This disposition is clearly "on the merits" within the meaning of § 2254(d).  See Trevino, 168 F.3d at 181 (finding that an explicit denial of relief by the Texas Court of Criminal Appeals accompanied by findings of fact and conclusions of law qualified as an "adjudication on the merits"); Davis v. Johnson, 158 F.3d

9

806, 812 (5th Cir. 1998) ("We have previously found that an explicit denial of relief on the merits by the Texas Court of Criminal Appeals is an 'adjudication on the merits' entitled to deference under AEDPA."), cert. denied, 119 S. Ct. 1474 (1999); Drinkard, 97 F.3d at 768 (finding "no question" that a claim was adjudicated on the merits in state court proceedings where the state trial court entered explicit findings later adopted by the Texas Court of Criminal Appeals). Because Heiselbetz's claims are, as he concedes, "purely matters of law," we may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Supreme Court precedent does not clearly establish that either the Eighth or Fourteenth Amendment requires a trial court to inform a jury that a capital defendant sentenced to life imprisonment must serve fifteen years before becoming eligible for parole. Simmons v. South Carolina, 512 U.S. 154, 171 (1994) (plurality opinion), Heiselbetz's primary authority, holds that where future dangerousness is an issue in a capital sentencing determination, the defendant has a Fourteenth Amendment due process right to have his sentencing jury informed that he will never be eligible for parole if sentenced to life imprisonment. On its face, Simmons applies only when a state, unlike Texas, provides for a life-without-parole sentencing alternative to

10

capital punishment.[4] The <u>Simmons</u> Court expressly declined to reach the question of whether this result was also compelled by the Eighth Amendment. <u>See</u> <u>id.</u> at 162 n.4. Heiselbetz does not cite, and we have not found, any other Supreme Court authority establishing that, under the Eighth or Fourteenth Amendments, a capital sentencing jury must be informed that a defendant sentenced to life imprisonment will not be eligible for parole for fifteen years.

Indeed, this court recently denied a CPC to appeal the denial of a due process claim identical to Heiselbetz's. The applicant in <u>Boyd v. Johnson</u>, 167 F.3d 907 (5th Cir. 1999), <u>petition for cert. filed</u>, --- U.S.L.W. --- (U.S. June 11, 1999) (No. 98-9745), sought a CPC to appeal the district court's denial of his § 2254 habeas application. <u>See</u> <u>id.</u> at 908. He claimed, among other things, that the state trial court's failure to instruct the jury on the parole implications of a life sentence in a capital case rendered the Texas sentencing scheme unconstitutional under <u>Simmons</u>. <u>See</u> <u>id.</u> We declined to grant a CPC:

> [I]n <u>Allridge v. Scott</u>, 41 F.3d 213, 222 (5th Cir. 1994), we interpreted <u>Simmons</u> to mean that "due process requires the state to inform a sentencing jury about a defendant's parole ineligibility when, and only when, (1) the state argues that

---

[4] Indeed, the <u>Simmons</u> plurality explicitly countered the dissent's argument that even among those states that permit the sentencing jury to choose only between "life" (unspecified) and "death," South Carolina was not alone in keeping parole information from the jury, <u>id.</u> at 179 & n.1 (Scalia, J., dissenting), by pointing out that two of these states, Texas and North Carolina, did not have a life-without-parole sentencing option. <u>See</u> <u>id.</u> at 168 n.8.

11

a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." Although the State argued that Boyd would represent a danger in the future, Boyd would have been eligible for release on parole had he received a life sentence. See Tex. Code Crim. Proc. Ann. § 42.18(8)(b)(2). Boyd's eligibility for parole renders Simmons inapplicable to his case. See Allridge, 41 F.3d at 222 (concluding Simmons unavailing in similar case). Hence, Boyd has not shown that the trial court violated his constitutional rights by failing to instruct the jury concerning his parole ineligibility.

Id. at 912-13; see Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[T]he Fifth Circuit has repeatedly refused to extend the rule in Simmons beyond those situations in which a capital murder defendant is statutorily ineligible for parole."), cert. denied, 119 S. Ct. 1107 (1999); Muniz v. Johnson, 132 F.3d 214, 224 (5th Cir.) (same), cert. denied, 118 S. Ct. 1793 (1998); Woods v. Johnson, 75 F.3d 1017, 1036-37 (5th Cir. 1996) (same); Johnson v. Scott, 68 F.3d 106, 111 (5th Cir. 1995) (same); Montoya v. Scott, 65 F.3d 405, 416-17 (5th Cir. 1995) (same); Allridge v. Scott, 41 F.3d 213, 221-22 (5th Cir. 1994) (same).

We also have rejected claims that the denial of parole information violates the Eighth Amendment. In Green, for example, we refused to grant a CPC to pursue a claim that the trial court's refusal to inform the jury that the habeas applicant would not be eligible for parole for twenty years if sentenced to life imprisonment violated the Eighth Amendment. See 160 F.3d at 1044-45. Similarly, in Johnson, we rejected such a claim outright, noting that

Justice Blackmun's plurality opinion in Simmons declined to express an opinion as to whether the decision was compelled by the Eighth Amendment; therefore, Simmons does not rest on Eighth Amendment grounds as Johnson argues. We have

12

> consistently held, however, that neither the due process clause nor the Eighth Amendment compels instructions on parole in Texas.

68 F.3d at 112 (citations omitted).

Therefore, we conclude that the adjudication of the Texas Court of Criminal Appeals on this issue was neither contrary to, nor involved an unreasonable application of, Supreme Court precedent. Heiselbetz is not entitled to a COA on the claims stemming from the trial court's failure to inform the jury of his parole eligibility.

**4. State Trial Court's Failure to Instruct the Jury on Meaning of "Same Criminal Transaction"**

Heiselbetz also contends that the state trial court's failure to instruct the jury as to the meaning of "same criminal transaction" violated the Eighth Amendment. Heiselbetz's indictment charged him with capital murder under Texas Penal Code § 19.03(a)(6) in that he committed the murders of Rena Rogers and Jacy Rogers "during the same criminal transaction." Prior to trial, Heiselbetz moved to quash the indictment on the ground that "[t]he statute under which the indictment is brought, namely, 19.03(6)(A) [sic] is unconstitutional because the statute does not define 'same criminal transaction' and as such is overbroad and does not confine the jury to an identifiable act, motive or circumstance." The trial court rejected his contention and, moreover, failed to offer any definition in the guilt-phase jury instructions. On direct appeal, Heiselbetz again raised this issue, but the Texas Court of Criminal Appeals concluded that it was inadequately briefed and denied relief. In his state

13

habeas application, Heiselbetz once more asserted the claim, only to have the court rule that "[c]laims raised on direct appeal cannot be relitigated in habeas corpus proceedings."  The Texas Court of Criminal Appeals later adopted the state habeas trial court's findings of fact and conclusions of law in denying relief on this issue.  The federal district court below held that the claim was procedurally barred.

We turn first to whether Heiselbetz has made a credible showing that his claim is not procedurally barred.  See Robison, 151 F.3d at 262-63.  Heiselbetz's brief addresses this issue in a single sentence:  "The federal district court also found a procedural default, but that is a mixed question of fact and law, and Petitioner claims the district court was incorrect."  He makes no argument that, for example, the state courts do not "strictly or regularly" enforce the procedural bar in question, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), or that he can show cause or prejudice for the procedural default, see Robison, 151 F.3d at 262.  Instead, Heiselbetz offers only a bald assertion that his claim is not procedurally barred.  He thus fails to make a credible showing that the district court erred in so finding.  We decline to grant a COA on this issue.

### 5.  Admission of Heiselbetz's Ex-Wife's Testimony

Next, Heiselbetz argues that the admission of the testimony of his wife at the time of the offense, Rebecca Heiselbetz, violated the Fourteenth Amendment right to family privacy recognized in Roe v. Wade, 410 U.S. 113 (1973).  Although

14

Heiselbetz raised this claim in his state habeas application, the state habeas trial court, whose findings of fact and conclusions of law later were adopted by the Texas Court of Criminal Appeals, did not directly address his constitutional argument. Rather, it concluded that in Heiselbetz's case, the spousal privilege recognized under the Texas Rules of Evidence did not apply because Heiselbetz had been charged with a crime against a minor child. Because the Texas court adjudicated Heiselbetz's Fourteenth Amendment family privacy claim on the merits, we may not grant relief unless the state adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Heiselbetz has cited, and we have found, no Supreme Court precedent clearly establishing that a wife's testimony against her husband violates the Fourteenth Amendment. Heiselbetz is not entitled to a COA on this issue.

### 6. Nullification Instruction

Heiselbetz's next set of claims stems from the state trial court's failure to submit to the jury a discrete special issue on mitigating circumstances. During the sentencing phase, Heiselbetz asked that the court give a third special issue, in addition to the two required under Texas law, which would address mitigating evidence directly. The court denied this request, submitting instead the following instruction:

> You are therefore instructed that your answers to the special issues, which determine the punishment to be

15

assessed the defendant by the Court, should be reflective of your finding as to the personal culpability of the defendant, EARL CARL HEISELBETZ, JR., in this case.

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the Defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character and record or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the defendant's personal responsibility at the time you answer the Special Issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, rather than a death sentence, is an appropriate response to the personal responsibility of the defendant, you are instructed to answer the special issue under consideration "no."

In his state habeas application, Heiselbetz argued that the trial court's actions violated the Eighth and Fourteenth Amendments. With respect to the former, he contended that the court's refusal to give a separate special issue on mitigation violates the requirement of Penry v. Lynaugh, 492 U.S. 302 (1989), that the jury have an opportunity to give effect to mitigating factors. The trial court's actions also contravened the Fourteenth Amendment's guarantee of equal protection, Heiselbetz claimed, because capital defendants who committed offenses on or after September 1, 1991 are entitled to such a special issue under Texas law. The Texas Court of Criminal Appeals rejected these arguments, concluding that (1) it had approved the instruction given, and Heiselbetz had given no reason why its ruling should be questioned or revisited, and (2) Heiselbetz's jury was instructed to consider mitigating evidence and, even if they had

16

not received such an instruction, his claim "cannot form the basis for an equal protection challenge." Heiselbetz renews his Eighth and Fourteenth Amendment arguments before us. Because the Texas Court of Criminal Appeals has adjudicated these claims on the merits, however, we may grant a COA only under the limited circumstances set out in 28 U.S.C. § 2254(d).

We consider Heiselbetz's Eighth Amendment claim first. In Emery v. Johnson, 139 F.3d 191 (5th Cir. 1997), cert. denied, 119 S. Ct. 418 (1998), we recently declined to grant habeas relief where the applicant had received an instruction almost identical to Heiselbetz's. There, the jury was instructed:

> [Y]our answers to the Special Issues, which determine the punishment to be assessed the defendant by the court, should be reflective of your finding as to the personal moral culpability of the defendant in this case.
>     When you deliberate about the questions posed in the Special Issues, you are to consider any mitigating circumstances supported by the evidence presented in both phases of the trial. A mitigating circumstance may be any aspect of the defendant's background, character, and record, or circumstances of the crime, which you believe makes a sentence of death inappropriate in this case. If you find that there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the special issues. If you determine, in consideration of this evidence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instructed to answer the Special Issue under consideration "No."

Id. at 200. The Emery court held that this instruction allowed the jury to consider any appropriate mitigating circumstance and required it not to sentence the defendant to death if a life sentence was appropriate in light of his moral culpability. Therefore, "[t]he instruction adequately addressed the [Penry]

17

Court's concerns about Texas's death penalty scheme by giving the jury the ability to consider any appropriate mitigating circumstance." Id. As we noted above, this instruction differs from Heiselbetz's only in a few minor details, and although the lower court cited Emery in denying relief, Heiselbetz does not attempt to distinguish it. Emery indicates that the state court's disposition of this issue is not contrary to Supreme Court precedent. Therefore, we cannot grant a COA on this issue.

We now turn to Heiselbetz's Fourteenth Amendment equal protection claim. Heiselbetz asserts that Texas defendants convicted of a capital offense committed before September 1, 1991 are a quasi-suspect class. Therefore, he reasons, Texas Code of Criminal Procedure article 37.071, which requires trial courts to submit a mitigation instruction only in the trials of capital defendants who committed crimes on or after September 1, 1991, must be subjected to strict scrutiny. Article 37.071 provides that during the sentencing procedure in a capital case for an offense that was committed on or after September 1, 1991, the trial court must instruct the jury that if it returns an affirmative finding to the special issues, it must answer the following: "Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a significant mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX. CODE.

18

CRIM. PROC. art. 37.071, § 2(e), (i). The trial court is not required to give such an instruction when the capital offense for which the defendant is to be sentenced was committed prior to September 1, 1991. Heiselbetz contends that this distinction violates the Fourteenth Amendment.

Heiselbetz has failed, however, to make a substantial showing that the Texas Court of Criminal Appeals' rejection of his equal protection argument was contrary to Supreme Court precedent or unreasonable. We have held repeatedly that capital defendants in general are not a suspect class. See Woods, 75 F.3d at 1036; Williams v. Lynaugh, 814 F.2d 205, 208 (5th Cir. 1987). Although Heiselbetz urges us to accord special class status to a subset of this larger group--that is, Texas capital defendants who committed offenses prior to September 1, 1991--we can find no Supreme Court precedent requiring such a conclusion. Nor have we been able to locate any Supreme Court case law establishing that, if capital defendants who committed crimes before September 1, 1991 are not a suspect class, the equal protection clause prevents a state from prospectively modifying its capital sentencing procedure as Texas did. We therefore cannot say that the state court's determination was contrary to clearly established federal law as determined by the Supreme Court or an unreasonable application of precedent in that "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Trevino, 168 F.3d at

19

181 (quoting <u>Drinkard</u>, 97 F.3d at 769).  Accordingly, we decline to issue a COA on this issue.

### 7.  Factual Sufficiency of the Evidence

Next, Heiselbetz claims that the evidence adduced at trial was "factually insufficient" to support his capital murder conviction rather than convictions for the murder of Jacy Rogers and the voluntary manslaughter of Rena Rogers.  When Heiselbetz raised the same argument in his state habeas application, the Texas Court of Criminal Appeals ruled against him:  Citing <u>Ex parte Williams</u>, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986), it held that claims of factual insufficiency of the evidence cannot be raised in a collateral attack on a conviction.  On reviewing the magistrate judge's report and recommendation, the district court noted that Heiselbetz's sufficiency of the evidence claim was procedurally barred.

First, we must determine if the applicant has made a credible showing that his claim is not procedurally barred.  <u>See</u> <u>Robison</u>, 151 F.3d at 262.  Heiselbetz asserts that no procedural default should be found because the case on which he bases his claim, <u>Clewis v. State</u>, 922 S.W.2d 126 (Tex. Crim. App. 1996) (en banc), was decided after his conviction became final.  Although the Texas Court of Criminal Appeals held for the first time in <u>Clewis</u> that Texas courts of appeals may review a conviction for factual sufficiency and set out the standard of such review, it also pointed out that it had "recently acknowledged in <u>Bigby v. State</u>, 892 S.W.2d 864, 874 (Tex. Crim. App. 1994), the

20

'considerable jurisprudence by this Court and our predecessors with criminal jurisdiction which had continually recognized the authority, though infrequently exercised, of the State's highest criminal court to review a case upon the facts as well as the law.'" Id. at 130 (quoting Bigby, 892 S.W.2d at 874) (footnote omitted). Moreover, as the Clewis court noted, Bigby observed that the Legislature has consistently recognized the power of criminal appellate courts to review a case for factual sufficiency. See id. at 130-31 (citing Bigby, 892 S.W.2d at 874-75 n.5). Even assuming that factual sufficiency review by the Texas Court of Criminal Appeals became available for the first time in Bigby, that case was decided on November 2, 1994, nearly eight months before the same court rejected Heiselbetz's direct appeal. Heiselbetz therefore cannot show cause for failing to raise the factual sufficiency issue on direct appeal, as Williams, 703 S.W.2d at 677, requires. Because he has not made a credible showing that his claim is not procedurally barred, we decline to grant a COA on this issue.

### 8. Admission of Heiselbetz's Statement

Finally, Heiselbetz claims that the admission into evidence of his July 1, 1991 statement violated his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to the assistance of counsel. Specifically, he argues that the warnings he received prior to giving the statement were insufficient to apprise him of his Fifth and Sixth Amendment rights and that, therefore, his waiver of those rights was not

21

knowing and voluntary.  The Texas Court of Criminal Appeals adjudicated these claims and found (1) that Heiselbetz had been fully warned in accordance with Miranda v. Arizona, 384 U.S. 436 (1966), and (2) that the standard Miranda warnings are adequate to inform a suspect of both his Fifth and Sixth Amendment rights. Therefore, under the AEDPA, we may grant relief only if this decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

After reviewing the record and the applicable law, we conclude that Heiselbetz is not entitled to a COA on these issues.  We note first that neither party contests that, as the state habeas trial court findings adopted by the Texas Court of Criminal Appeals indicate, Heiselbetz was warned in accordance with Miranda before he gave his July 1, 1991 statement.  Citing Edwards v. Arizona, 451 U.S. 477, 487 (1981), however, Heiselbetz argues that the Fifth Amendment requires law enforcement officers also to warn a suspect that they may not re-initiate questioning after the suspect has invoked his right to consult counsel before further interrogation.  But while Edwards did state that "an accused . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made

22

available to him, unless the accused himself re-initiates further communication, exchanges, or conversations with the police," id. at 484-85, it did not require that law enforcement officers recite its holding to suspects under interrogation. Heiselbetz has not cited, nor have we found, any Supreme Court case that establishes such a rule. We therefore conclude that the state court adjudication as to Heiselbetz's Fifth Amendment claim was not contrary to Supreme Court precedent or unreasonable.

The Supreme Court has held explicitly that the <u>Miranda</u> warnings are sufficient to inform an accused of his Sixth Amendment right to counsel. <u>See</u> <u>Patterson v. Illinois</u>, 487 U.S. 285, 292-93 (1988). Heiselbetz responds that <u>Patterson</u> was wrongly decided. Nevertheless, its existence demonstrates beyond dispute that the state court decision on Heiselbetz's Sixth Amendment claim was neither contrary to clearly established Federal law as determined by the Supreme Court nor an unreasonable application thereof. We decline to grant a COA on Heiselbetz's claims stemming from the admission of his July 1, 1991 statement.

## IV. CONCLUSION

For the foregoing reasons, we DENY Heiselbetz's request for a COA.