### Ex parte Brent Ray BREWER, Applicant.

#### No. 46,587–01.

Court of Criminal Appeals of Texas.

Jan. 31, 2001.

Rick Keffler, Amarillo, for appellant.

John L. Owen, Special Prosecutor, Amarillo, State's Atty., Austin, for the State.

### ORDER

The order was delivered PER CURIAM.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Article 11.071, Tex.Code Crim.Proc.

On June 1, 1991, applicant was convicted of the offense of capital murder. The jury answered the special issues submitted pursuant to Article 37.071, Tex.Code Crim. Proc., and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Brewer v. State,* No. 71,307 (Tex.Crim.App., delivered June 22, 1994) (nonpublished).

Applicant presents eight allegations in his application in which he challenges the validity of his conviction and resulting sentence. The trial judge entered findings of fact and conclusions of law and recommended that relief be denied.

This Court has reviewed the record with respect to the allegations made by applicant. We adopt the trial judge's findings and conclusions. Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

PRICE, J., filed a dissenting opinion joined by JOHNSON and HOLCOMB, JJ.

PRICE, J., filed a dissent to the order dismissing the Application, in which JOHNSON and HOLCOMB, JJ., joined.

The applicant alleges that his trial counsel did not provide effective assistance of counsel because counsel failed to request the services of a mental health expert to examine the applicant in preparation for trial. Because I believe that the applicant presents a claim that is—at the very least—worth looking at more closely, and

because the majority fails to file and set this case for further review, I dissent.

The test for ineffective assistance of counsel is contained in the Supreme Court's opinion in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel is shown when "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 687, 104 S.Ct. 2052. There are two components to this test: (1) deficient performance and (2) prejudice.

Deficient performance consists of acts or omissions of counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. In reviewing the acts and omissions of counsel appellate courts must be highly deferential. *Id.* at 689, 104 S.Ct. 2052. We must judge counsel's performance from the totality of the representation and not on isolated instances in the record. *Id.*

There are certain minimum standards that counsel must meet, however. In *Ex parte Welborn,* 785 S.W.2d 391 (Tex.Cr. App.1990), we explained that:

It is evident that a criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel. *Ex Parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Cr. App.1982); *Ex Parte Duffy,* 607 S.W.2d 507, 516 (Tex.Cr.App.1980). A natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. *Ex Parte Duffy,* 607 S.W.2d at 517. It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision. 607 S.W.2d at 526. Counsel has a duty to

bring to bear such skill and knowledge as will render the trial a "reliable adversarial testing process." 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. *Id.* at 393 (citations omitted) (emphasis added). In other words the presumption of reasonable trial strategy does not attach *unless and until* counsel has conducted the necessary factual and legal investigation.

The second component of ineffective assistance of counsel is shown when there is a reasonable probability of a different result if counsel had not performed deficiently. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, when counsel's deficient performance undermines our confidence in the outcome of the trial, we must reverse the decision and remand for a new trial.

When the law is applied to the facts of this case, I think that the majority is incorrect in concluding that the applicant has not alleged a meritorious claim. Trial counsel in this capital case failed to procure the services of a mental health expert who could have examined the applicant in preparation for trial. In an affidavit, counsel explained his reasons for not doing so.

(a) Nothing about the Applicant's behavior caused suspicion about his mental health status;

(b) Under then-controlling law, a mitigation special issue on punishment could be submitted only when: (1) the accused had a limited intellectual functioning or brain defect; and (2) that condition had a proven nexus with his commission of the crime so as to reduce his moral blameworthiness. The predicate for the punishment mitigation special issue was absent in this case. The Court advised Daffern [counsel] at trial that a punishment mitigation special issue would not be given.

(c) Presenting expert psychiatric and psychological evidence could be a "double edged sword" in that negative information about Applicant could be exposed and exploited by the prosecution. Possibly the jury would consider such evidence adversely to Applicant in answering the "future danger" punishment special issue[.]

Findings of Fact and Conclusions of Law, *Ex parte Brewer,* No. 46,587–01. These reasons do not justify the complete failure to investigate the applicant's mental condition in preparation for trial.

Trial counsel claims that nothing about the applicant's behavior caused suspicion about his mental health status, but the applicant had been committed to a mental hospital for severe depression only three months before the instant offense occurred. This is sufficient to alert trial counsel that there may have been some mental health issues. Moreover, the Supreme Court in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), explained that when the defendant's mental condition is relevant to his guilt and punishment, "the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal a defense." *Id.* at 80, 105 S.Ct. 1087. This is especially true in a capital case when the jury decides whether the defendant will live or die based on its answers to questions about the deliberateness with which the defendant committed the offense and the defendant's potential for future dangerousness. *See id.* at 83–84 & 86–87, 105 S.Ct. 1087.

In his second and third reasons for not hiring a mental health expert, counsel cites concerns about whether he could get a mitigation instruction from the trial judge and whether the evidence of the appellant's mental health condition would have been double-edged. But how does counsel know whether there is a legitimate basis for requesting a mitigation instruction or if there is double-edged evidence if he has not had the applicant examined? There is no indication from the record that trial counsel was, himself, a mental health expert who was capable of making such determinations. For these purposes, counsel was a layperson and should have relied on someone with mental health expertise. Also, an offer of proof about the applicant's mental condition could have served as the basis for a claim on appeal had the trial judge erroneously denied a mitigation instruction in the jury charge.

The most compelling reason for finding trial counsel's performance deficient is that mental health evidence is useful beyond a mitigation special issue. The jury did receive instructions on future dangerousness and the deliberateness with which the offense was committed. And an expert can assist trial counsel in challenging the State's experts during the punishment phase. If the examination had revealed negative evidence that would have been harmful to the applicant and not helpful, then trial counsel could have decided not to present that evidence at trial. That would have prevented the State's exploitation of the evidence. But by deciding before an investigation, trial counsel made an uninformed decision that a majority of this Court endorses with its decision.

Prejudice results from counsel's deficient performance when the deficient performance is sufficient to undermine the outcome of the trial. The result of an examination of the applicant after his trial demonstrates prejudice.

Dr. Mark Cunningham, a board certified forensic psychologist examined the applicant in 1996. His conclusions after examining the applicant, conducting interviews with third parties, and reviewing the applicant's history are as follows:

1. It is unlikely that Brent's [applicant's] conduct in the offense was com-

mitted deliberately as this terms [sic] is defined in the Jury Instructions. His psychological, emotional, and interpersonal deficits at the time of the offense represented an active impediment to "careful and thorough consideration; characterized by awareness of the consequences; willful, slow, unhurried, and steady as though allowing time for decision." [1]

2. The probability that Brent would engage in future acts of criminal violence that would constitute a continuing threat to society while in prison is considered to be quite low. (1.61 offenses per 100 capital offenders per year). Further, this probability is substantially less than that represented by inmates systemwide in the Texas prison system. Brent would not, then, be expected to be a disproportionate risk of violence in prison.

The probability that Brent would commit future acts of criminal violence that would constitute a continuing threat to society if paroled after serving a capital life sentence is also considered to be low.

3. The techniques and research literature necessary to reach the above conclusions were available in May 1991 at the time of Brent's trial.

Application for Appellant, Exhibit 1, *Psychological Evaluation of Factors relevant to Capital Sentencing,* at 47, *Ex parte Brewer,* No. 46, 587–01.

Evidence that was highly relevant to the special issues and that could have been presented at trial was available. Dr. Cunningham's conclusions were not based on a

mitigation special issue, but on the special issues that actually were presented to the jury in the applicant's trial. The jury did not have the benefit of this evidence when it decided the special issues. I think the majority is wrong to not grant the relief requested and, especially, to not file and set this ground for review for briefs and a closer look by the entire Court.

Although the applicant's trial counsel failed to develop and present evidence that was relevant to the special issues that the jury used to sentence the applicant to death, the majority puts its stamp of approval on the applicant's death sentence without further inquiry. Counsel's omission undermines confidence in the result of the punishment phase of the applicant's trial. I dissent.

---

[1]. At the time of the applicant's trial the special issues were:

(1) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result.

(2) Whether there was a reasonable probability that the defendant would commit criminal acts of violence that would constitute s continuing threat to society.

Deliberately was defined as "a manner of doing an act characterized by or resulting from careful and thorough consideration; characterized by awareness of the consequences; willful, slow, unhurried, and steady as though allowing time for decision."