United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-70034

_____

BRENT RAY BREWER,

Petitioner-Appellee,

VERSUS

DOUG DRETKE,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

ON PETITION FOR REHEARING

Before JOLLY, SMITH, and GARZA,
    Circuit Judges.

PER CURIAM:

   The petition for panel rehearing is
DENIED. The prior opinion, *Brewer v.*

*Dretke*, 410 F.3d 773 (5th Cir. 2005), is
WITHDRAWN, and the following opinion is
substituted:

Before JOLLY, SMITH, and GARZA,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge.

The district court conditionally granted, pursuant to 28 U.S.C. § 2254, death row inmate Brent Brewer's petition for writ of habeas corpus, holding that the special issues submitted during his punishment phase were a constitutionally inadequate vehicle for the jury to give effect to his mitigating evidence. The state appeals on the grounds that the court failed (1) properly to assess the reasonableness of the state court's adjudication as required by 28 U.S.C. § 2254(d) and (2) correctly to apply valid Supreme Court and Fifth Circuit precedent. We reverse and render judgment denying the habeas petition.

I.

Brewer was sentenced to death for a murder committed during a robbery. At trial, he introduced a variety of mitigating evidence, including the following facts: that he had a bout with depression three months before the murder; that he was briefly hospitalized for that depression;[1] that his co-defendant, a woman with whom he was apparently obsessed, dominated and manipulated him;[2] that he had been abused by his father;[3] that he had witnessed his father abuse his mother; and that he had abused drugs.[4] Brewer did not secure expert psychological or psychiatric evidence because of a decision, made in consultation with his attorney, that such material would not be in his best interest. Brewer submitted at least seven proposed instructions designed to give effect to the mitigating evidence that he did present, but the trial court denied all of those instructions and, instead, required only that the jury answer two special questions relating to deliberateness and potential for future dangerousness.

The conviction was affirmed on direct appeal,[5] after which Brewer initiated what were

---

[1] The state's brief reveals that Brewer's mental illness claim is not based on an especially strong factual predicate:

  Brewer was not adjudged mentally retarded, however he was involuntarily committed on January 1, 1990 for "major depression, *single episode, without psychotic features*, polysubstance abuse." The examining physician based his opinion on a *suicide note [Brewer] wrote to his mother.* On January 25, [Brewer] signed a request for *voluntary admission to* Big Springs [*sic*] State Hospital for fourteen days.

(continued...)

[1](...continued)
(Emphasis added.) These facts differ dramatically from those in *Bigby v. Dretke,* 402 F.3d 551, 571 (5th Cir.), *cert. denied,* 126 S. Ct. 239 (2005), in which the petitioner's "evidence indicated that his schizophrenia was chronic and severe, caused him to suffer delusions with respect to the actions and motivations of the people around him, could not be adequately treated, and significantly impacted his interpersonal relationship abilities."

[2] This evidence was not medical and did not go to Brewer's volition; it consists merely of lay observations that the woman was the alpha partner in the relationship.

[3] There was no evidence that Brewer's child abuse in any way impaired his cognitive abilities.

[4] This evidence apparently consisted of Brewer's use of marihuana as a teenager.

[5] *Brewer v. State*, No. 71,307 (Tex. Crim. App. 1994) (unpublished), *cert. denied*, 514 U.S. 1020
(continued...)

ultimately unsuccessful state habeas proceedings.[6] He then filed the instant federal habeas petition. After requesting supplemental briefing concerning *Tennard v. Dretke*, 542 U.S. 274 (2004), the district court, as we have said, granted conditional relief.

## II.
### A.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), at 28 U.S.C. § 2254(d), sets forth the conditions under which a court shall grant a petition for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claimSS
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) addresses pure questions of law and mixed questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id.*

Section 2254(d)(2) addresses pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding.[7]

### B.

We review the federal district court's findings of fact for clear error and its conclusions of law *de novo*. *See Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001). The legal conclusion at issue is the holding that "[r]eviewing the evidence in light of the special issues, a jury would be very hard pressed to see the evidence presented as anything but aggravating. Failure to submit an instruction on mitigation evidence was an unreasonable application of federal law and Supreme Court precedent."[8]

---

[5](...continued)
(1995).

[6] *Ex parte Brewer*, No. 46,587-01 (Tex. Crim. App. 2001) (unpublished).

---

[7] *See Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing). Factual determinations made by the state court are presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

[8] As we will discuss momentarily, this language
(continued...)

Section 2254(d)(1) therefore controls our review, and we conduct a *de novo* inquiry to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[9] We do so here by analyzing *de novo* the federal district court's decision to see whether it properly decided that the state court did not satisfy § 2254(d)(1).

### III.

The trial court instructed the jury, pursuant to article 37.071 of the Texas Code of Criminal Procedure (Vernon 1991), as follows:

#### Special issue No. 1

Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, BRENT RAY BREWER, that caused the death of the deceased, Robert Doyle Laminack, was committed deliberately and with the reasonable expectation that the death of the deceased would result?

#### Special issue No. 2

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, BRENT RAY BREWER, would commit criminal acts of violence that would constitute a continuing threat to society?

### A.

We consider it appropriate to devote significant space to discussing the jurisprudence associated with article 37.071. In *Jurek v. Texas*, 428 U.S. 262, 272 (1976), the Court upheld the Texas statutory special issues approach in the punishment phase of capital trials, but did so on the explicit premise that the special issues were capable of an expansive construction to capture proper mitigation evidence. In *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988), the Court made plain that, at least with respect to some mitigation evidence, deviating from the special issues approach is not necessary. Specifically, it found the "dangerousness" special issue was capable of capturing evidence of the petitioner's good behavior while incarcerated.

In *Penry v. Lynaugh*, 492 U.S. 302, 322 (1989) ("*Penry I*"), the Court held that the two special issues were not sufficient to give mitigating effect to Penry's evidence of mental retardation and a history of abuse. It stated that each of those factors represents "'a two-edged sword': [Each] may diminish [the petitioner's] blameworthiness for his crime even as it indicates there is a probability that he will be dangerous in the future." *Id.* at 324.

Four years after *Penry I*, the Court decided *Johnson v. Texas*, 509 U.S. 350, 367-68 (1993), in which the defendant invoked *Penry I* in an attempt to invalidate his death sentence—a sentence imposed despite his evidence of youth. *See id.* at 368. The future dangerousness issue alone, the Court concluded, gave the jurors a constitutionally sufficient vehicle for considering Johnson's youth in

---

[8](...continued)
guage—stating that the mitigating evidence was capable of nothing but an aggravating interpretation—seems somewhat at odds with language earlier in the opinion stating that "the evidence at Petitioner's trial does not fit squarely [in the dangerousness instruction] either. One could view the evidence as either aggravating or mitigating."

[9] The district court rejected seven additional habeas claims that Brewer included in his petition. Brewer does not cross-appeal these rulings.

making its reasoned moral response.[10] "It strains credulity to suppose that the jury would have viewed the evidence of petitioner's youth as outside its effective reach in answering the second special issue." *Id.*

After *Johnson*, therefore, it was indisputable that *Jurek* remained good law and that, although some relevant evidence may receive constitutionally insufficient mitigating effect under the standard Texas special issues (*e.g.,* evidence of mental retardation), other evidence is quite capable of being given mitigating effect through that methodology. When mitigating evidence falls into that latter category, the imposition of the death penalty under the pre-*Penry I* scheme does not offend the Eighth Amendment.

In following *Penry I*, this court developed a two-part test for determining whether the defendant's evidence requires a special mitigation instruction: (1) whether the proffered material was constitutionally relevant mitigating evidence and (2) whether the proffered evidence was beyond the effective reach of the jurors.[11] We in turn defined "constitutionally relevant" evidence as that which was "due to the uniquely severe permanent handicaps with which the defendant was burdened through no fault of his own . . . ."[12] In *Tennard*, however, the Supreme Court flatly rejected that test of constitutional relevance and instructed us instead that the definition of relevance in this context is no different from the definition of relevance in most others: "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence . . . ."[13]

B.

For the mitigating evidence to be within the effective reach of the jury in answering the special issues, the special interrogatories must be capable of giving relevant evidence constitutionally sufficient mitigating effect. Whether that sufficiency requires that the evidence be given "full," or merely "some," mitigating effect has been the subject of considerable discussion in this court,[14] but ultimately the distinction is only one of semantics, because regardless of what label is put on the word "effect," it is indisputable that the effect must be constitutionally "sufficient." Even if the requirement is called "full," it means nothing

---

[10] *Johnson*, 509 U.S. at 368 ("The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside. We believe that there is ample room in the assessment of future dangerousness for a juror to take account of the difficulties of youth as a mitigating force in the sentencing determination.").

[11] *Smith v. Cockrell*, 311 F.3d 661, 680 (5th Cir. 2002) (internal citations and quotations omitted).

[12] *Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd*, 506 U.S. 461 (1993).

[13] *Tennard*, 542 U.S. at 283 (internal citations and quotations omitted.). *Tennard* further clarified that impaired intellectual functioning is inherently mitigating (and therefore must be capable of being given mitigating effect through the special jury instructions) and is subject to the same legal analysis as is mental retardation for purposes of a *Penry I* claim. *See id.* at 287.

[14] *Compare Coble v. Dretke*, 417 F.3d 508, 527 (5th Cir. 2005) *with Cole v. Dretke*, 418 F.3d 494, 496-511 (5th Cir. 2005).

more than "sufficient." We now turn to the district court's application of this standard for the purpose of deciding, under the facts and circumstances of this case, whether the special interrogatories allowed the jury to give such sufficient mitigating effect to the evidence in question.

### C.

To determine whether a jury has sufficient vehicles for considering mitigating evidence, the habeas court must determine whether "there is no reasonable likelihood that the jury would have found itself foreclosed from considering the relevant aspects of the [mitigating evidence]." *Johnson*, 509 U.S. at 368. We conduct a *de novo* inquiry into whether the district court applied this standard properly, and we conclude that it did not.

As we noted earlier, at trial Brewer introduced a variety of mitigating evidence, including the following facts: that he had a bout with depression three months before the murder; that he was briefly hospitalized for that depression; that his co-defendant, a woman with whom he was apparently obsessed, dominated and manipulated him; that he had been abused by his father; that he had witnessed his father abuse his mother; and that he had abused drugs.[15] Apparently the district court seriously considered only the mental illness and drug abuse as potentially warranting habeas relief.[16]

---

[15] For further explanation of each of set of proffered evidence, *see* notes 1-4, *supra*.

[16] There is considerable authority that evidence of a troubled childhood falls within the scope of the special issues. *See Graham*, 506 U.S. at 475; *Jacobs v. Scott*, 31 F.3d 1319, 1327 (5th Cir. 1994). Comparison of *Graham* and *Penry I* reveals a constitutional distinction between, on the one hand,
(continued...)

Brewer offered evidence of one hospitalization

---

[16](...continued)
"severe" abuse of the type Penry sustained and, on the other, a "mere" troubled childhood of the sort Graham experienced. In *Graham* the Court seems to sanction such a side-by-side comparison as a permissible way of conducting the inquiry. *See Graham*, 506 U.S. at 476.

There is no easy way to locate Brewer at either pole. First, the trial evidence indicates that Brewer's father hit Brewer "numerous" times but, because of the timing of the father's reintroduction into the family, this abuse could not have occurred until Brewer was at least fifteen (Penry was subject to abuse beginning at a very young age.). Although the abuse was more than an isolated incident, it does not rise to the level of that at issue in *Penry*. *See Penry I*, 492 U.S. at 309. Moreover, as noted earlier, Brewer and his attorney made an informed decision not to present expert psychiatric testimony.

Second, *Penry I* considers the mitigation issue in light of Penry's mental retardation and child abuse, *evaluated as a single unit*. *See also Cole*, 418 F.3d at 502 (alluding to the mitigating evidence as that of Cole's "destructive family background *and* organic neurological deficiency") (emphasis added). The vast majority of subsequent caselaw has addressed mental retardation in isolation. It is thus doubtful that Brewer's child abuse, without additional evidence of cognitive limitation, had mitigating effects sufficiently beyond the jury's reach to constitute a violation of the Eighth Amendment.

For the remaining issues (other than mental illness, substance abuse, and troubled childhood), it was at least reasonably likely that the special issue involving dangerousness did not foreclose consideration of the mitigating evidence. *See Cole*, *id.* at 508. To understand why the district court did not undertake a serious discussion of the other five pieces of evidence, *see* notes 1-4, *supra*.

for a single episode of non-psychotic major depression that was at least partially a result of a suicide note he had written to his mother.

This circuit has made a distinction between mental retardation and mental illness.[17] A mental illness inquiry does not require any adjustment to the standard two-pronged interrogatory, and we have rejected habeas petitions on these grounds on other occasions.[18] The only instances in which mental illness has given rise to *Penry I* violations involve those where the illness in question is chronic and/or immutable. *See, e.g.*, *Bigby* (in which petitioner suffered from chronic paranoid schizophrenia).[19] In *Graham* the Court stated:

[W]e are not convinced that *Penry* could be extended to cover the sorts of mitigating evidence Graham suggests without a wholesale abandonment of *Jurek* and perhaps also of *Franklin v. Lynaugh . . . . Jurek* is reasonably read as holding that the circumstance of youth is given constitutionally adequate consideration in deciding the special issue. We see no reason to regard the circumstances of Graham's *family background* and positive character traits in a different light. Graham's evidence of transient upbringing and otherwise nonviolent character more closely resembles Jurek's evidence . . . than it does Penry's . . . .

*Graham*, 506 U.S. at 476 (emphasis added).

More recently, this court in *Cole* has explained why evidence of a troubled childhood may, as a result of its temporary character, fall sufficiently within the ambit of the special dangerousness instruction: "Given the experts' testimony during the punishment phase, the jury could have believed them and found that, although Cole suffered a turbulent childhood and may suffer from diminished impulse control, he is capable of change and thus would not necessarily remain a danger in the future." *Cole*, 418 F.3d at 507. In *Coble*, a panel of this court made an analysis that is

---

[17] *See Robison v. Johnson*, 151 F.3d 256, 265-66 (5th Cir. 1998).

[18] *See, e.g., Hernandez v. Johnson*, 248 F.3d 344, 349 (5th Cir. 2001) (holding that the future dangerousness special issue was capable of giving effect to this mitigating evidence); *Lucas v. Johnson*, 132 F.3d 1069, 1082-83 (5th Cir. 1998) (holding that the deliberateness special issue was capable of giving this evidence effect). These cases remain good law even after *Tennard*, because *Tennard* overturned only Fifth Circuit methodology for determining what mitigating evidence is constitutionally relevant. *See Tennard*, 542 U.S. at 285-87.

[19] The *Bigby* court decided that the second special issue (future dangerousness) was incapable of acting as an exculpatory vehicle for this evidence:

Furthermore, although this Circuit has previously held that mitigation evidence of mental illness could be considered within the context of the second special issue, future dangerousness, if the illness can be controlled or go into remission, *see e.g.*, *Lucas[ v. Johnson]*, 132 (continued...)

[19](...continued)
F.3d 1069; *see also Hernandez v. Johnson*, 248 F.3d 344 (5th Cir.2001), Bigby's mitigation evidence indicated that his condition cannot be adequately controlled or treated . . . . In short, Bigby's evidence that his mental disorders made it difficult for him to avoid criminal behavior has the same "double-edged sword" quality as Penry's evidence that he was unable to conform his conduct to the law.

*Bigby*, 402 F.3d at 571.

consistent with *Cole* on this point of law: "This Circuit has previously held that mitigating evidence of mental illness could be considered within the context of the second special issue, future dangerousness, if the illness can be controlled or go into remission."[20]

Although *Graham* and *Jacobs* provide sufficient authority for our determination that the special issues are here capable of giving Brewer's evidence of a troubled childhood constitutionally mitigating effect, our court's more recent opinions in *Cole* and *Coble* bolster that proposition considerably. Cole presented evidence of destructive family background and of organic neurological defects that arguably amounted to a lack of impulse control.[21] The *Cole* court relied on *Graham*'s holding that "family background evidence falls within the broad scope of Texas's special issues."[22]

In *Coble* and *Cole*, moreover, the record contained expert psychiatric evidence that bore both on the defendants' future dangerousness and other potential issues relating to mental impairment.[23] Even if Brewer had proved mental illness (which it appears he did not), and even if mental illness were tantamount to mental retardation for the purposes of our case law (which it is not), Brewer came nowhere near to producing evidence sufficient for us to grant relief.

*Cole* offers the following summary of the caselaw:

> As the expert testimony intimated that Penry was unable to learn from his mistakes, the *Johnson* court concluded that the only logical manner in which Penry's jury could have considered the evidence of his mental retardation under the future dangerousness special issue was as an aggravating factor: Penry would remain a danger in the future because there was no chance that he would ever understand that rape and murder were wrong. Thus, Penry's jury was unable to give any mitigating effect to the mental retardation evidence that he proffered.

*Cole*, 418 F.3d at 505 (footnote omitted). The *Cole* panel went on to distinguish the evidence before it from that in *Penry I* on the ground that, because the evidence indicated that Cole's condition was capable of being cured and that he was capable of learning from his mistakes, the future dangerousness question could also give the psychiatric evidence constitutionally sufficient mitigating effect. *See id.*

---

[20] *Coble*, 417 F.3d at 523 (citing *Lucas v. Johnson*, 132 F.3d 1069, 1082-83 (5th Cir. 1998); *Robison v. Johnson*, 151 F.3d 256, 266 (5th Cir. 1998)).

[21] In *Cole*, the state presented the following mitigating evidence: (1) Cole's mother was an alcoholic unable to care for her children; (2) Cole's father was arrested for robbery; (3) Cole's father deserted the family when Cole was five years old; (4) Cole's mother moved with her children to her parent's home; (5) Cole's grandparents were alcoholics who did not want the children; (6) Cole was isolated from other children because his grandparents' home was eight miles out of town; (7) Cole had difficulty getting to school; (8) Cole was placed in a children's home at the age of five; (9) while there, his mother visited him only twice; (10) his father never visited him there; and (11) his uncle adopted his brother, but not him. *Cole*, 418 F.3d at 499-500.

[22] *Id.* at 507 (internal quotations omitted) (citing (continued...)

[22] (...continued)
*Graham*, 506 U.S. at 476).

[23] *See, e.g.*, *id.* at 505-06; *Coble*, 417 F.3d at 522-23.

at 505-07.

We confront an even more extreme case here. There does not appear to be one iota of evidence suggesting either that Brewer's condition is permanent or that he experienced cognitive limitations of any sort as the result of it.

We likewise have rejected claims that mitigating evidence pertaining to substance abuse, without an adjustment to the sentencing issues, can support a *Penry* violation.[24] Generally these cases stand for the proposition that, even under the two-pronged special issue methodology, a jury can adequately incorporate evidence of short-term mental illness and substance abuse into its decision calculus.[25]

Therefore, the district court erred in granting Brewer's petition for a writ of habeas corpus. The judgment is REVERSED, and judgment is RENDERED denying the petition.

---

[24] *See, e.g.*, *Harris v. Cockrell*, 313 F.3d 238, 242 (5th Cir. 2002) (holding that the "jury was able to give mitigating effect to the evidence of Harris's alcoholism through its answers to the first and second special issues"); *James v. Collins*, 987 F.2d 1116, 1121 (5th Cir. 1993) (holding that voluntary intoxication can be given effect through the deliberateness prong).

[25] Moreover, we hesitate to infer any diminished capacity in moral or analytic reasoning in light of the fact that Brewer has a tested IQ of 115, placing him in roughly the ninety-fourth percentile of human intelligence.