# BREWER *v.* QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

No. 05–11287.   Argued January 17, 2007—Decided April 25, 2007

STEVENS, J., delivered the opinion of the Court, in which KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. ROBERTS, C. J., filed a dissenting opinion, in which SCALIA, THOMAS, and ALITO, JJ., joined, *ante*, p. 265. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, and in which ALITO, J., joined as to Part I, *ante*, p. 280.

*Robert C. Owen,* by appointment of the Court, 549 U. S. 1029, argued the cause for petitioner. With him on the briefs were *Jordan M. Steiker* and *John King.*

*Edward L. Marshall,* Assistant Attorney General of Texas, argued the cause for respondent. With him on the briefs were *Greg Abbott,* Attorney General, *Kent C. Sullivan,* First Assistant Attorney General, *Eric J. R. Nichols,* Deputy Attorney General, and *Gena Bunn* and *Carla E. Eldred,* Assistant Attorneys General.*

JUSTICE STEVENS delivered the opinion of the Court.

This is a companion case to *Abdul-Kabir* v. *Quarterman, ante,* p. 233. Like the petitioner in that case, petitioner Brent Ray Brewer claims that the former Texas capital sentencing statute impermissibly prevented his sentencing jury from giving meaningful consideration to constitutionally relevant mitigating evidence.

In *Penry* v. *Lynaugh,* 492 U. S. 302 (1989) *(Penry I),* we held that jury instructions that merely articulated the Texas "special issues," without directing the jury "to consider fully Penry's mitigating evidence as it bears on his personal culpability," did not provide his sentencing jury with an adequate opportunity to decide whether that evidence might provide

---

*Briefs of *amici curiae* urging reversal were filed for the American Academy of Child and Adolescent Psychiatry et al. by *James W. Ellis, April Land,* and *Stephen K. Harper;* and for the Child Welfare League of America et al. by *Jeffrey J. Pokorak, Marsha Levick,* and *Pamela Harris.*

a legitimate basis for imposing a sentence other than death. *Id.*, at 323. We characterized the evidence of Penry's mental retardation and history of childhood abuse as a "two-edged sword," because "it may diminish his blameworthiness for his crime even as it indicates that there is a probability that he will be dangerous in the future." *Id.*, at 324.

As an overview of the cases both preceding and following *Penry I* demonstrates, we have long recognized that a sentencing jury must be able to give a "'reasoned moral response'" to a defendant's mitigating evidence—particularly that evidence which tends to diminish his culpability—when deciding whether to sentence him to death. *Id.*, at 323; see also *Abdul-Kabir, ante,* at 246–256, 260–263. This principle first originated in *Lockett* v. *Ohio,* 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982), in which we held that sentencing juries in capital cases "must be permitted to consider *any* relevant mitigating factor," *id.,* at 112 (emphasis added). In more recent years, we have repeatedly emphasized that a *Penry* violation exists whenever a statute, or a judicial gloss on a statute, prevents a jury from giving meaningful effect to mitigating evidence that may justify the imposition of a life sentence rather than a death sentence. See *Abdul-Kabir, ante,* at 260–263. We do so again here, and hold that the Texas state court's decision to deny relief to Brewer under *Penry I* was both "contrary to" and "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. § 2254(d).

## I

In 1991, Brewer was convicted of murder committed during the course of a robbery. At sentencing, he introduced several different types of mitigating evidence, including

> "that he had a bout with depression three months before the murder; that he was briefly hospitalized for that depression; that his co-defendant, a woman with whom he

was apparently obsessed, dominated and manipulated him; that he had been abused by his father; that he had witnessed his father abuse his mother; and that he had abused drugs." *Brewer* v. *Dretke,* 442 F. 3d 273, 275 (CA5 2006) *(per curiam)* (footnotes omitted).[1]

As a result of a strategic decision on his counsel's part, Brewer neither secured nor presented any expert psychological or psychiatric testimony.

At the conclusion of the sentencing hearing, Brewer submitted several additional instructions designed to give effect to the mitigating evidence he did present. App. 81–87. The trial judge rejected all of his proposed instructions and instead instructed the jury to answer only two special issues:

> " 'Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, BRENT RAY BREWER, that caused the death of the deceased, Robert Doyle Laminack, was committed deliberately and with the reasonable expectation that the death of the deceased would result?

.        .        .        .        .

---

[1] On direct appeal, the Texas Court of Criminal Appeals (CCA) summarized the same evidence as follows:

"1) Appellant was not mentally retarded, but was involuntarily committed on January 1, 1990, for 'major depression, single episode, without psychotic features, polysubstance abuse.' The examining physician based his opinion on a suicide note appellant wrote to his mother. On January 25, appellant signed a request for voluntary admission to Big Springs State Hospital for fourteen days.

"2) Appellant came from an abused background where he was ignored by both his father and step-father. He did not have a relationship or live with his real father until after he was fifteen-years old. Appellant's father hit him on several occasions, once with the butt of a pistol and once with a flashlight. Appellant's father frequently beat his mother. Appellant's father had once told him, 'If you ever draw your hand back, you'd better kill me because I'll kill you.'

"3) Appellant had smoked marijuana when he was a teenager." *Brewer* v. *State,* No. 71,307 (June 22, 1994), p. 15, App. 140 (footnotes omitted).

" 'Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, BRENT RAY BREWER, would commit criminal acts of violence that would constitute a continuing threat to society?' " 442 F. 3d, at 277.

In closing argument, the prosecutor emphasized that Brewer's violent response to his father's extensive physical abuse of both Brewer and his mother supported an affirmative answer to the "future dangerousness" special issue. In contrast, he deemphasized any mitigating effect that such evidence should have on the jury's determination of Brewer's fate:

> "And, you know, folks, you can take a puppy, and you can beat that puppy and you can make him mean, but if that dog bites, he is going to bite the rest of his life, for whatever reason.
>
> "Whatever got him to this point, he is what he is today. And that will never change. That will never change.
>
> "All that's happened to this time or all those years cannot change the violence and the cold, cold-bloodedness that he's exhibited right here. Not one tear. Not one tear, because life means nothing to him. Zero.
>
> "You go back, you look at the evidence and you decide, not because of a poor family and not because of the survivors, because of the evidence that you see that he has shown." App. 118.

The prosecutor stressed that the jurors lacked the power to exercise moral judgment in determining Brewer's sentence, admonishing them that "[y]ou don't have the power to say whether [Brewer] lives or dies. You answer the questions according to the evidence, mu[ch] like you did at the guilt or innocence [sic]. That's all." Id., at 114. Ultimately, the jury answered both special issues in the affirmative, and Brewer was sentenced to death.

Brewer's conviction and sentence were affirmed on direct appeal.[2] *Brewer* v. *State,* No. 71,307 (Tex. Crim. App., June 22, 1994) (en banc), App. 122–171. He then filed an application for state postconviction relief, which the CCA denied on January 31, 2001, over the dissent of three judges.[3] *Ex parte Brewer,* 50 S. W. 3d 492 (2001) *(per curiam* order).

Brewer subsequently filed a federal habeas petition in the United States District Court for the Northern District of Texas. After requesting supplemental briefing concerning *Tennard* v. *Dretke,* 542 U. S. 274 (2004), the District Court granted conditional relief. *Brewer* v. *Dretke,* No. Civ.A.2:01–CV–0112–J (Aug. 2, 2004), App. 185–213. On March 1, 2006, the United States Court of Appeals for the Fifth Circuit reversed the judgment of the District Court and rendered its own judgment denying the petition. 442 F. 3d, at 282. We granted certiorari. 549 U. S. 974 (2006).

## II

Like the petitioner in *Abdul-Kabir,* Brewer contends that the same constitutional error that infected Penry's sentencing hearing occurred in his trial. We agree. As did Penry's, Brewer's mitigating evidence served as a "two-edged

---

[2] The CCA's opinion on direct appeal provides the only meaningful explanation by a Texas state court as to why Brewer's *Penry I* claim was denied. See n. 5, *infra.* When Brewer raised the same claim in his state postconviction proceedings, the trial court set forth, and the CCA adopted, a one-sentence ruling embracing the holding previously made on direct appeal: "The . . . special issues . . . were an adequate vehicle for the jury's consideration of the mitigating evidence . . . ." App. 176; *Ex parte Brewer,* 50 S. W. 3d 492, 493 (2001) *(per curiam).*

[3] Judge Price filed a dissent to the order dismissing Brewer's postconviction application for relief, joined by Judges Johnson and Holcomb. *Id.,* at 493–495. In the dissenters' view, Brewer had alleged a colorable claim of ineffective assistance of counsel, based on his counsel's failure to procure a mental health expert who could have examined him in preparation for trial. *Id.,* at 493.

sword" because it tended to confirm the State's evidence of future dangerousness as well as lessen his culpability for the crime.[4] *Penry I*, 492 U. S., at 324. It may well be true that Brewer's mitigating evidence was less compelling than Penry's, but, contrary to the view of the CCA, that difference does not provide an acceptable justification for refusing to apply the reasoning in *Penry I* to this case.[5] There is surely a reasonable likelihood that the jurors accepted the prosecutor's argument at the close of the sentencing hearing that all they needed to decide was whether Brewer had acted deliberately and would likely be dangerous in the future,[6]

---

[4] For example, the prosecution introduced the testimony of a police officer who had been called to quell a family dispute as evidence of Brewer's violent character. App. 6–15. The prosecution also introduced testimony from a doctor who treated Brewer's father after Brewer struck him with a broom handle in response to his father's attack on his mother. *Id.*, at 23–25.

[5] The CCA's opinion purporting to distinguish *Penry I* simply stated: "We conclude the second punishment issue provided an adequate vehicle for the jurors to give effect to appellant's mitigating evidence. We have held a stay in a mental hospital does not evidence a 'long term mental illness which would affect appellant's ability to conform to the requirements of society.' *Joiner* [v. *State*, 825 S. W. 2d 701, 707 (1992) (en banc)]. As in *Joiner*, the evidence shows no more than appellant's threat to commit suicide and a stay at a hospital on one occasion. *Id.* Further, appellant's evidence of drug abuse and an abusive homelife was given effect within the scope of the punishment issues. *Ex parte Ellis*, 810 S. W. 2d 208, 211–212 (Tex. Cr. App. 1991) (drug addiction); *Goss v. State*, 826 S. W. 2d 162, 166 (Tex. Cr. App. 1992) (abusive household)." No. 71,307, at 15, App. 141.

In neither its opinion in this case nor in *Joiner* did the CCA explain why Brewer's evidence was not the same kind of "two-edged sword" as Penry's, other than to suggest that it was less persuasive. 492 U. S., at 324.

[6] "It's not a matter of life and death. It's whether it was deliberate. Was this act deliberate? Will he continue to commit violent acts? That's all you answer. And every one of you people told me you would base that not upon the result, but upon what the evidence dictates you must do." App. 115 (paragraph break omitted).

necessarily disregarding any independent concern that, given Brewer's troubled background, he may not be deserving of a death sentence.

Also unpersuasive in distinguishing the instant case from others to which *Penry I* applies is the Fifth Circuit's explanation regarding the lack of expert evidence in Brewer's case (as compared to that presented by the petitioner in *Abdul-Kabir*) and its distinction between mental illness and mental retardation. In its opinion reversing the District Court's conditional grant of habeas relief, the Court of Appeals noted that, under its precedents, "[t]he only instances in which mental illness has given rise to *Penry I* violations involve those where the illness in question is chronic and/or immutable [as in the case of mental retardation]." 442 F. 3d, at 280. The court also emphasized the lack of expert psychiatric evidence in this case, contrasting the record below with that in *Abdul-Kabir,* and concluded that Brewer "came nowhere near to producing evidence sufficient for us to grant relief." 442 F. 3d, at 281. Nowhere in our *Penry* line of cases have we suggested that the question whether mitigating evidence could have been adequately considered by the jury is a matter purely of quantity, degree, or immutability. Rather, we have focused on whether such evidence has mitigating relevance to the special issues and the extent to which it may diminish a defendant's moral culpability for the crime. The transient quality of such mitigating evidence may make it more likely to fall in part within the ambit of the special issues; however, as we explained in *Penry I,* such evidence may still have "relevance to the defendant's moral culpability beyond the scope of the special verdict questions." 492 U. S., at 322 (citing and quoting *Franklin* v. *Lynaugh,* 487 U. S. 164, 185 (1988) (O'Connor, J., concurring in judgment)).

## III

Under the narrowest possible reading of our opinion in *Penry I,* the Texas special issues do not provide for adequate

consideration of a defendant's mitigating evidence when that evidence functions as a "two-edged sword." As the District Court explained in its opinion granting habeas corpus relief in this case:

"The mitigating evidence presented may have served as a basis for mercy even if a jury decided that the murder was committed deliberately and that Petitioner posed a continuing threat. Without an instruction, much less a special issue on mitigation, this evidence was out of the jury's reach. Given the nature of the mitigating evidence before the jury and the lack of any instruction on mitigation, there is a reasonable likelihood that the jury applied its instructions in a way that prevented the consideration of the mitigating evidence. Reviewing the evidence in light of the special issues, a jury would be very hard pressed to see the evidence presented as anything but aggravating. Failure to submit an instruction on mitigation evidence was an unreasonable application of federal law and Supreme Court precedent. Accordingly, habeas relief on this issue is conditionally granted." No. Civ.A.2:01–CV–0112–J, at 9, App. 196.

In reversing the District Court's grant of habeas relief, and rejecting that court's conclusion that Brewer's mitigating evidence was effectively "out of the jury's reach," the Court of Appeals mischaracterized the law as demanding only that such evidence be given "sufficient mitigating effect," and improperly equated "sufficient effect" with "full effect."[7] This is not consistent with the reasoning of our

[7] The Court of Appeals explained: "For the mitigating evidence to be within the effective reach of the jury in answering the special issues, the special interrogatories must be capable of giving relevant evidence constitutionally sufficient mitigating effect. Whether that sufficiency requires that the evidence be given 'full,' or merely 'some,' mitigating effect has been the subject of considerable discussion in this court, but ultimately the distinction is only one of semantics, because regardless of what label is put on the word 'effect,' it is indisputable that the effect must be consti-

opinion issued after Penry's resentencing (and before the Fifth Circuit's opinion in this case). See *Penry* v. *Johnson*, 532 U. S. 782 (2001) *(Penry II)*. Like the "'constitutional relevance'" standard that we rejected in *Tennard*, a "sufficient effect" standard has "no foundation in the decisions of this Court." 542 U. S., at 284.

For reasons not supported by our prior precedents, but instead dictated by what until quite recently has been the Fifth Circuit's difficult *Penry* jurisprudence, the Court of Appeals concluded that Brewer's evidence of mental illness and substance abuse could not constitute a *Penry* violation. It further concluded that "evidence of a troubled childhood may, as a result of its temporary character, fall sufficiently within the ambit of" the special issues. 442 F. 3d, at 280. For the reasons explained above, as well as in our opinion in *Abdul-Kabir*, these conclusions fail to heed the warnings that have repeatedly issued from this Court regarding the extent to which the jury must be allowed not only to consider such evidence, or to have such evidence before it, but to respond to it in a reasoned, moral manner and to weigh such evidence in its calculus of deciding whether a defendant is truly deserving of death. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

[For dissenting opinion of THE CHIEF JUSTICE, see *ante*, p. 265; for dissenting opinion of JUSTICE SCALIA, see *ante*, p. 280.]

---

tutionally 'sufficient.' Even if the requirement is called 'full,' it means nothing more than 'sufficient.'" *Brewer* v. *Dretke*, 442 F. 3d 273, 278–279 (CA5 2006) *(per curiam)* (footnote omitted).